Southern Mortgage Guaranty Corporation *v.* King *et al.*

(*Nashville*, December Term, 1934.)

Opinion filed January 15, 1935.

J. F. ATCHLEY, of Chattanooga, for petitioners Groover.

NOONE & ZIEGLER and RANKIN, FRAZIER & ROBERTS, all of Chattanooga, for Southern Mortgage Guaranty Corp.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This appeal is from a decree dismissing on demurrer a petition filed in the above-styled cause by Burl S. Groover and wife. In the principal case a decree was entered on the 27th day of October, 1932, against Kingwood Estates, Incorporated, in the amount of $5,000. On September 18, 1933, an execution was issued thereunder and levied upon a certain lot of land in Hamilton county as the property of Kingwood Estates; on October 20th following this lot was sold under said execution to Alvin Ziegler, and on the same day the sheriff executed a deed to Ziegler, which was registered on November 1, 1933.

The petition showed that Kingwood Estates had executed a deed to Groover and wife on the 17th day of July, 1930, which was not registered until the 28th day of February, 1933; this being four months after the entry of the decree for $5,000 against Kingwood Estates.

On the foregoing statement of facts the priority of the purchaser at the sheriff's sale clearly appears, since the execution was levied and the deed made within 12 months of the entry of the decree and within the period when this judgment was a lien by statute; sections 8043 and 8045 of the Code, reading as follows:

"8043. Lien on land.—Judgments and decrees obtained in any court of record of this state, in the county where the debtor resides at the time of rendition, shall be liens upon the debtor's land in that county from the time the same were rendered."

"8045. To be enforced in twelve months.—The lien thus given will be lost, unless an execution is taken out and the land sold within twelve months after the rendition of the judgment or decree."

However, the petitioners say that while the decree aforesaid was entered on the 27th day of October, 1932, that it was in fact rendered on the 3d day of October, 1932; and relying upon the language of the statute they insist that since the lot was not sold until the 20th day of October, 1933, which was more than 12 months "after the rendition of the judgment or decree," that the lien had been lost and the title of petitioners under its deed, registered on the 28th day of February, 1933, took priority.

It appears from an inspection of the decree that, although it was not entered until the 27th day of October, the final words thereof were: "This 3rd day of October, 1932. This decree entered *nunc pro tunc*." Did the 12 months begin to run from the 3d day of October, or from the 27th of October, 1932? The chancellor was of opinion that the holding of this court in *Jackson* v. *Jarratt*, 165 Tenn., 76, 52 S. W. (2d), 137, 138, was controlling.

We think not. The holding in that case was that a judgment may not be entered *nunc pro tunc* at a term following its rendition, when the effect would be to cut off the right of appeal by the other party. The general rule is therein recognized that, "A judgment is 'rendered' when the Court makes an order therefor," and numerous sustaining text-book and court decision authorities are cited; also, that by a proper order *nunc pro tunc*, made even at a subsequent term, the court may so antedate the judgment as to give it effect as of the date of rendition, except as to intervening rights of innocent third parties, and provided that the discretion vested in the court must not be so used as to work an injustice. The *nunc pro tunc* order was set aside in that case because the effect of it was to deprive the other party of a substantial right, and this without his consent, express or implied.

It is to be observed that the court did not in the Jarratt Case reject, but recognized, the general rule that (1) a judgment is "rendered" when ordered or pronounced by the court, and that (2) an order *nunc pro tunc*, when made in the exercise of a proper discretion, and with due regard to the rights of others affected, will operate to date the judgment back to the date of actual rendition.

An exhaustive search has failed to discover a direct decision of the precise point here presented; that is, the effect of a proper *nunc pro tunc* order on the date from which a judgment lien commences to run. The only expression in the reported cases in Tennessee which appears to us to have significance is found in the concluding paragraph, on page 289, of the opinion in the leading case of *Wm. McLean et al.* v. *State of Tennessee et al.*,

8 Heisk., 23. After reciting that the case had been argued at a preceding term, and held over by the court, and that one of the parties defendant had died in the meantime, the court announced ''that the judgment should be entered as of the last term, without notice of the death.'' And then there follows this closing statement in the opinion:

''The Attorney General waiving the entry *nunc pro tunc*, preferring to preserve the judgment lien for twelve months, the judgment was entered of the present term, with leave to revive as to the deceased party, before execution issued.''

■ This would appear to be a very clear expression of the opinion of this distinguished Attorney General (Hon. Jos. B. Heiskell), acquiesced in by the court, that a judgment lien would begin to run from the date fixed by a *nunc pro tunc* order, rather than from the date of actual entry. If, in the instant case, counsel for the judgment creditor had elected to waive the entry *nunc pro tunc*, his lien would have commenced to run only from the entry of his decree. There is authority for the view that a judgment lien will run only from the date of entry, even though the statute calls, as does ours, for the date of rendition (i. e., *Callanan* v. *Vortuba*, 104 Iowa, 672, 74 N. W., 13, 40 L. R. A., 375, 65 Am. St. Rep., 538), but no case has been found so holding when the decree entered contained a *nunc pro tunc* provision, and no rights of third parties were involved.

We can find no ground in the case before us for refusing to give effect to the *nunc pro tunc* order made as a part of the decree pronouncing the judgment procured by the creditor asserting the judgment lien. He has fixed the date of the ''rendition,'' from which date

the statute expressly provides that his lien on the lands of the judgment debtor shall commence to run.

The holding herein is not in conflict with expressions in the Jarratt opinion, and of this court in other cases referred to, that "the Court speaks authoritatively only through its records," and that "no recovery or other action may be based on a judgment, nor need any relief from it be sought, until the judgment 'rendered' has been entered, so as to give it binding effect as a judicial act." When a judgment rendered on one date is later entered, the foregoing requirement is met; its effective date, however, as between the parties to it, may be related back to a previous date of rendition by a proper *nunc pro tunc* order, and having been made a matter of record the court speaks authoritatively as of the time fixed by the decree.

Since the statute (section 8045) provides that this "lien thus given will be lost, unless an execution is taken out and the land sold within twelve months after the rendition of the judgment or decree," and since the land was not sold until after the expiration of 12 months from the date of rendition, it results that petitioners acquired priority under their registered deed.

The decree of the chancellor must be reversed.