McALESTER v. MONTEVERDE et al.—115 S. W. (2d), 257.

Western Section. August 19, 1937.

Petition for Certiorari denied by Supreme Court, February 12, 1938.

W. G. Cavett, of Memphis, for plaintiff in error.

Chandler, Shepherd, Owen & Heiskell, of Memphis, for defendants in error.

ANDERSON, J.   This record presents a contest of the will of E. W. McAlester, deceased, the principal ground of the attack being that the testator was mentally incapacitated at the time the will was executed.   There was a jury verdict in favor of the proponent of the will, and from a judgment thereon the contestant appealed in error.

The first question presented is one of practice arising out of the following state of facts:

The terms of the circuit court of Shelby county are fixed by Code, section 159, to begin on the third Mondays in January, March, May, September, and November of each year.   This contest was last tried at the November term, 1936.   The verdict of the jury was returned on November 25, 1936, and a record thereof made upon what is referred to as the clerk's "day book" and that of the judge which may be presumed to correspond to the dockets of those officials, but no minute entry recording the verdict and awarding judgment thereon was made at that term.   At the January term, 1937, the proponent of the will moved the court to enter upon the minutes a nunc pro tunc order recording the verdict of the jury and awarding judgment thereon as of November 25, 1936, the date on which the verdict was actually returned as reflected by the respective "day books" or dockets of the judge and clerk.   This motion having been made on the last day of January, 1937, term, it was taken under advisement by the court and disposed of at the March, 1937, term by an order entered on April 8, 1937.   The court declined to enter a nunc pro tunc order recording the verdict and judgment thereon, but did enter an order awarding judgment on the verdict as of April 8, 1937.

Thereupon on April 9, 1937, a day of the March, 1937, term, the contestant filed a motion for a new trial which was overruled at the same term, and from the judgment entered as aforesaid, the appeal in error was prosecuted.

The foregoing facts are reflected by the technical record.   The evidence heard upon the trial at the November term, 1936, was not preserved by a bill of exceptions.   There was, however, a bill of exceptions making a part of the record certain proceedings hereinafter referred to, had in connection with the alleged misconduct of a juror which was made a ground of the motion for a new trial.

There was no application at any time for an allowance of time in which to file a bill of exceptions preserving as a part of the record the evidence heard upon the trial and there was no effort at any time to file such a bill of exceptions.

The first contention of the plaintiff in error is that the court was without jurisdiction to enter an order recording the verdict and judgment at a term subsequent to the trial term, at which the verdict was actually returned.   It is argued that by reason of the

entry of the verdict and judgment at a subsequent term the contestant was deprived of his right to have the court, in consideration of his motion for a new trial, pass upon the sufficiency of the evidence introduced upon the trial to sustain the verdict and also of his right to preserve the evidence by a bill of exceptions. It is insisted that this view is fully supported by the case of Jackson v. Jarrett, 165 Tenn., 76, 52 S. W. (2d), 137, but we do not think so.

That was a case tried before the circuit judge without a jury wherein it was held that "a judgment may not be entered nunc pro tunc at a term following its rendition, when the effect would be to cut off the right of appeal by the other party." Southern Mortgage Guaranty Corp. v. King et al., 168 Tenn., 309, 312, 77 S. W. (2d), 810, 811.

The nunc pro tunc order made by the circuit judge in that case at a term subsequent to the trial term was set aside because the effect of it was to deprive the other party of a substantial right, namely, his right of appeal, without his consent, express or implied. Id.

The contestant was deprived of no such right in this case, for it is only by virtue thereof that he is before us.

As above noted, at the time it was rendered, the verdict was duly recorded upon what is referred to as the "day book" kept by the judge and a similar record kept by the clerk. Presumably these records correspond respectively to the judge's docket and the clerk's docket kept pursuant to rules of the court regulating the transaction of its business. Nunnelly v. Smith, 4 Baxt. 310, 63 Tenn., 310. Contrary to common-law practice, it was the duty of the clerk to enter the judgment on the verdict as soon as it was returned. He needed no authority from the court or any one else to do this. Code, section 10093, subsec. 3; Wind Rock Coal & Coke Co. v. Robbins, 1 Tenn. App., 734.

The omission of the entry amounted simply to a failure of the clerk to perform a ministerial duty. Since the verdict was seasonably recorded upon his docket by the trial judge, there was sufficient matter of record to authorize the entry of the verdict and judgment at a subsequent term under the authority conferred by Code, section 8721. McCall v. State, 167 Tenn., 329, 69 S. W. (2d), 892; Upchurch v. State, 153 Tenn., 198, 281 S. W., 462; Fort v. Dixie Oil Co., 171 Tenn., 199, 101 S. W. (2d), 692; Dunn v. State, 127 Tenn., 267, 275, 154 S. W. 969.

The fact that the verdict and judgment were not entered until a subsequent term did not deprive the contestant of his right to file a motion for a new trial, making any question arising upon the record made and preserved at the trial term. He was not required to file such motion until after the judgment was entered. McCall v. State, supra.

■■ If, under the facts of this case, the trial judge was without authority at the subsequent term to pass upon the question raised by the motion for a new trial with respect to the sufficiency of the evidence to sustain the verdict (Dunn v. State, 127 Tenn., 267, 276, 154 S. W., 969), it was only because the contestant failed to make the evidence a part of the record by a bill of exceptions taken and filed at the trial term. The taking and filing of a bill of exceptions does not depend upon the entry of disposition of a motion for a new trial, except in those cases where a motion for a new trial, having been filed at one term, is carried over and disposed of at another term, the exception existing only by virtue of Code, section 8822. Dunn v. State, supra; Hickerson v. State, 141 Tenn., 502, 213 S. W., 917; Carpenter v. Wright, 158 Tenn., 289, 13 S. W. (2d), 51; Austin v. State, 157 Tenn., 202, 7 S. W. (2d), 806; National Refining Co. v. Littlefield, 142 Tenn., 689, 223 S. W., 140.

■ We do not think that Code, section 8822, is applicable to the situation disclosed by the record for the reason among others, that the motion for a new trial was filed and disposed of at the same term, but even if it be considered that the section is applicable, it would avail contestant nothing; for he did not, as required by the statute, apply for or obtain leave of the court to file a bill of exceptions making the evidence heard upon the trial at the previous term a part of the record. National Refining Co. v. Littlefield, supra. He only filed a bill of exceptions preserving the proceedings hereinafter referred to as having been had in connection with the consideration and disposition of a motion for a new trial.

■■ However, as above indicated, we think that under the principles announced in Dunn v. State, supra, and Carpenter v. Wright, supra, and Railroad Co. v. Fort, 112 Tenn., 432, 439, 80 S. W., 429, 431, the contestant had a right to take a bill of exceptions at the trial term, thus making the evidence a part of the record, and, under the facts of this case, we think it was his duty to do this if he desired to preserve the evidence as a basis for the consideration at a subsequent term of any question requiring an examination thereof. The principle of practice announced by the court in Railroad Co. v. Fort, supra, we think applicable to the present situation. Referring to the settled practice that any matter not otherwise a part of the record must be made so by a bill of exceptions taken and filed before the adjournment of the term of court at which the action complained of occurred, the court in that case said:

''This rule applies to proceedings had in the progress of the case, as well as to the action of the court upon trial and judgment. If the action of the court is had at a term previous to that at which the final judgment is entered, the bill of exceptions must be made and filed at such previous term, and, if not then done, the exceptions

are waived. The statute enacted in 1899 (Laws 1899, p. 657, c. 275) authorizing the trial judge to allow time in which to file bills of exceptions after final judgment, does not apply to wayside bills of exceptions of this character. The object of the rule is to secure an accurate record of the facts upon which the exceptions are predicated, which can only be done by requiring the bill of exceptions to be made and authenticated while they are yet fresh and clear in the minds of the presiding judge and the parties to the case. Long experience has proven that this is a most salutary rule, to which courts should strictly adhere. Any other practice would result in uncertainty and confusion.''

So, if the contestant lost the right to have considered questions requiring an examination of the evidence introduced upon the trial, it was through his own fault in failing to seasonably make the evidence a part of the record and not due to the fact that the judgment was not entered until a term subsequent to the trial term. Cf. Austin v. State, supra.

The remaining question is grounded upon the alleged misconduct of a juror. In support of his motion for a new trial, the contestant filed the affidavit of the juror Sidney C. Davis, the substance of which was that during the trial of the case and prior to the verdict ''he had unwittingly and unintentionally talked to a person who claimed to know E. W. McAlester at the Baptist Hospital and who knew and stated what E. W. McAlester's mental condition was;'' that ''whether this influenced affiant or not he cannot say unless it did so in a small way in making up his verdict;'' that ''there was very little or no discussion when they retired to the jury room, although the vote was not unanimous to sustain the will;'' that ''the discussion in the jury room was not so much about the mental capacity of E. W. McAlester, but that they should give Mrs. Ellis the balance of the property as it was small, and she had cared for him, and on this the jury finally agreed.''

When this affidavit was filed, the proponent of the will obtained from the same juror a supplemental affidavit, the substance of which was that on one night during the course of the trial some one, who happened to be in his place of business in making conversation with him, asked whether he was a juror and, upon affiant stating that he was, the party (whose name was not disclosed in either affidavit) replied ''that if it was the McAlester case that McAlester was crazy as a bedbug when he was at the Baptist Hospital,'' and that ''he tried to get in bed with a woman;'' that ''affiant states that this person was not attempting to influence him in any way and that the conversation went no further, he stating that he did not care to discuss due to his position as a juror;'' that ''he did not report to any of his fellow jurors any of the conversation that he

had with this person and his opinion was not changed by anything he said.''

None of the jurors were examined upon consideration of the motion for a new trial, the two affidavits being all that was offered in connection therewith.

It is too well settled to require citation of authority that the affidavit of the juror with respect to what influenced him in reaching a conclusion will not be received to impeach the verdict.

The contestant insists, however, that the situation disclosed by the record brings the case within the rule that the verdict is vitiated when it is made to appear that evidence bearing upon the material issues was received and considered by the jury otherwise than through the testimony of witnesses introduced upon the trial without regard to whether it is made to appear that such evidence influenced the verdict.

In support of his contention, the contestant cites, among others, the case of Robilio v. Webb, 7 Tenn. Civ. App., 127, and Street Railroad & Telephone Cos. v. Simmons, 107 Tenn., 392, 64 S. W., 705, 708. In the former case it appeared that the jurors had received extraneous evidence bearing upon the material issues and this having been made to appear to the circuit judge, he concluded that the evidence so received was not prejudicial to the defendant, against whom the verdict had been rendered, and accordingly overruled the motion for a new trial, setting up this ground. Taking a different view, the Court of Civil Appeals said:

''We have reached the conclusion that harmlessness cannot be assumed as a matter of course, and that unless we can say so, such conduct must be censured although not inspired by the winning party, nor by bad motives upon the part of the jury.'' (Citing cases.)

A new trial was accordingly awarded.

In the other case cited a juror communicated to his fellow jurors certain information which he had with respect to which there had been no evidence introduced upon the trial and which was deemed by the court to be material upon the question of the amount of damages awarded the plaintiff.

In holding a verdict in favor of the plaintiff vitiated by this conduct, the court said:

''When improper evidence is allowed to go to the jury, it is enough that the case may have been prejudiced thereby, and the law will so presume.'' Street Railroad & Tel. Cos. v. Simmons, supra.

The other cases relied upon by the contestant are substantially to the same effect.

In all of them which we have been able to examine, the information was communicated to the entire jury; was material to the issues being tried; and was favorable to the verdict returned.

In the instant case the information communicated by some unknown person was simply to the effect that the testator was insane while he was in the Baptist Hospital. There is nothing in the present record to show that the testator was ever in that institution or, if so, when that was with reference to the time the will was executed. The information was not communicated to the other jurors, and even if considered material to any issue in the case, instead of being favorable to the verdict was directly antagonistic thereto.

Under the authorities above cited, we think it clearly true that if the appellate court can see that the case may have been prejudiced by information wrongfully received, then there is a conclusive presumption that it was so prejudiced and the verdict will be set aside. But we find no substantial basis for the conclusion that a case may have been so prejudiced when the information relied on is directly opposed to the verdict. In such a situation, the verdict itself clearly negatives the idea that the information had any influence upon the juror receiving it and leaves no room for a presumption to the contrary.

The contestant argues that being presumably a person of integrity, the effect of the information received by the juror was, in common parlance, to cause him "to lean backward" and reach a conclusion opposed thereto in an effort to exclude the improper information from his consideration of the case and keep his conscience clear. However interesting from a psychological standpoint this view may be, we think it entirely too speculative to afford a practical basis for the determination of the rights of litigants in the orderly administration of justice.

The result is that the judgment is affirmed at the cost of the plaintiff in error.

Senter and Ketchum, JJ., concur.