MEEGAL v. MEMPHIS STREET RY. CO. et al.—238
S. W. (2d) 519.

Western Division.   January 6, 1950.

404

Harry P. Rubert, Lovick P. Miles, Jr., both of Memphis, for plaintiff-in-error.

Emmett W. Braden, Thomas R. Prewitt, both of Memphis, for defendant-in-error.

ANDERSON, P. J., The plaintiff, Albert E. Meegal, sued the Memphis Street Railway Company and Walter Ernest Huffman for damages for personal injuries sustained by him when a bicycle on which he was riding was allegedly struck by a bus owned by the defendant street railway company and operated on the streets of Memphis by its servant, Huffman. A trial before the judge and a jury resulted in a verdict for the defendants upon which a judgment was entered, dismissing the suit.

The plaintiff, Meegal, insists: (1) that there was no material evidence to support a verdict; that (2) the judge committed the reversible error in giving to the jury a special request submitted by the defendant, instructing them that the fact that the defendant railway company paid a part of the medical and hospital bills of the plaintiff should not be considered as an admission of liability on the part of the defendants, or either of them; and (3) that the plaintiff's case was prejudiced by the misconduct of a juror in allegedly ''obtaining evidence outside the court room and communicating (it) to the other jurors after the charge of the court and while the jury was deliberating.''

The accident happened in the daylight at the intersection of Florida Street and McLemore Avenue in Memphis. Florida Street runs north and south and is intersected by McLemore Avenue running east and west. Just prior to the accident the bus was proceeding north on Florida Street, the driver intending to turn east on McLemore. Plaintiff on his bicycle was also proceeding

north on Florida purposing to cross the intersection and continue in that direction.

The factual theory of the declaration supported by some evidence was that after plaintiff had entered the intersection the bus came from behind him into McLemore and without stopping or giving any warning, made the right turn into McLemore and as it did so the side of it struck the plaintiff and injured him and plaintiff's evidence was to this effect.

Upon the other hand, there was substantial evidence to show that the bus passed the plaintiff when he was one hundred feet south of the intersection; that as it did so the operator blew his horn twice; that the bus was then traveling at a speed of fifteen to twenty miles per hour and the bicycle at approximately five miles per hour; that after passing the plaintiff, the operator slowed the bus down to a speed of approximately five miles per hour; that he gave a right turn signal by means of electrical signal device situated on the rear of the bus; that, in addition, the operator looked to the rear by means of his rear view mirror, and seeing no bicycle, proceeded to turn east on McLemore; that when the turn had been almost completed and the bus was facing east on McLemore, the plaintiff ran his bicycle into the right center of the vehicle; that the bus stopped within two feet thereafter; that the plaintiff did not see the bus until after he entered McLemore Avenue and that just prior to the accident instead of being on the lookout ahead, the plaintiff was looking back over his right shoulder

That the evidence tending to show the foregoing facts was abundantly sufficient to justify the jury verdict is not a debatable question.

Pertaining to the plaintiff's second contention, it appears that immediately after the accident the operator of the bus telephoned a request to the office of the street railway company that a policeman and an ambulance be sent to the scene. Very soon thereafter, the ambulance and the officer arrived and the plaintiff was conveyed to St. Joseph's Hospital. Shortly after the plaintiff's admission to the hospital, the defendant railway company sent a doctor to attend the plaintiff. Plaintiff accepted the doctor's services without demur, and did not himself call another physician until after he had employed an attorney.

In addition, the plaintiff offered in evidence a bill from the hospital, showing on its face that the defendant railway company paid certain medical and hospital expenses incident to the treatment of the plaintiff at that institution.

Applicable to thes facts, the judge granted the defendant's special request to the effect that the payment of the medical and hospital bills should not be considered an admission of liability on the part of either defendant.

█ If the question be the control or identity of the apparatus causing the injury, an offer of assistance to the injured party or the payment of his hospital and medical expenses, may be competent as evidence of an implied admission bearing on that issue, but by the weight of authority, such evidence is not competent as an admission tending to show actionable negligence. Wigmore on Evidence, 3d Ed., Vol. II, sec. 283-A; 31 C. J. S., Evidence, p. 1052, Section 291. Cf. D. S. Etheridge Co. v. Peterson, 19 Tenn. App. 530, 90 S. W. (2d) 957. The considerations which are the bases of the majority rule are the same as those which underlie the

rule that the making of repairs of premises subsequent to an accident due to a defect thereon cannot be considered as an admission of antecedent negligence. Wigmore on Evidence, supra, and Cf. Illinois Cent. Railroad Co. v. Wyatt, 104 Tenn. 432, 58 S. W. 308.

▊ The courts of North Carolina, though recognizing the general rule, appear to hold that if the offer of assistance or payment of hospital and medical expenses is attended by circumstances indicating an admission of liability rather than an act of benevolence, the evidence is competent upon the issue of negligence. Brown v. Wood, 201 N. C. 309, 160 N. E. 281; Arnold v. Owens, 4 Cir., 78 F. (2d) 495. The same position is taken in Briggs v. John Yeon Co., 168 Or. 239, 122 P. (2d) 444.

We need not speculate whether under the rule for which plaintiff contends an offer of assistance, fulfilled or unfulfilled, would jeopardize the protection ordinarily afforded by the now widely carried policies of liability insurance where such a policy is held by the offerer.

It is sufficient that, with the greatest deference to those who entertain it, we are unable to assent to the view that the motive with which assistance is rendered or offered, should be a controlling factor in determining whether the fact that such assistance was rendered constituted an admission bearing on the issue of negligence.

Apart from the elusiveness of human motives generally and the fact that a contrary view would sanction as an admission against interest, a conclusion of law reached by a layman or at least one of mixed law and fact. Cf. D. S. Etheridge Co. v. Peterson, supra, under the suggested rule one involved in an accident could never lend substantive assistance to an injured party by procuring a doctor for him or otherwise, without running the risk of making evidence against himself. Liability in person-

al injury cases is often a doubtful matter, about which lawyers and judges have difficulty in agreeing. It ought not to be required that a layman be put to such a decision before he can contribute to the relief of an injured party without running the risk of being held to have admitted that the injuries were due to his fault. Cf. Sias v. Consolidated Lighting Co., 73 Vt. 35, 50 A. 554.

A willingness to assist another in distress should not, we think, be accompanied by such a hazard. It is not in the interest of society that humanitarian or benevolent instincts be so hobbled. Nor is it in keeping with the mores of the community. Before heeding a call for succor, only an outcast would debate the question of his liability vel non and turn his answer on the conclusion reached.

The ruling upon the particular question in Sullivan v. Heyer, 300 Ill. App. 599, 21 N. E. (2d) 776, does support the plaintiff's contention, but it was made without discussion or citation of authority, and, with due deference, we are unable to regard it as persuasive.

In the present case, the subject was not touched upon by the judge in his general charge. Therefore the request embodying correct statement of the law applicable to the facts of the case was not improper.

The remaining question is based on the alleged misconduct of the juror, Graham.

During the trial Graham rode on one of the defendant's buses, similar to the one involved in the accident under review. When the bus which was proceeding north on Cleveland Street made a right turn at Overton Park (an entirely different intersection from that here involved), Graham inquired of the operator, "Do you always stop for this corner?" to which the operator

responded, ''I have always stopped there because there is always somebody on the street to get on or off.''

██ ██ During the deliberations of the jury, Graham communicated this information to the other jurors. All the jurors, who were examined in the connection with the motion for a new trial, testified that Graham's statement had no influence whatsoever on their verdict. With respect to the last statement, to avoid any undue implication, we repeat what has been said many times before, that a juror will not be allowed to impeach his verdict by saying after the trial what did or did not influence him. The testimony of jurors is, of course, received to show the fact that material evidence not heard upon the trial was communicated to them during their deliberations, but not to show its effect. However, since the act of 1911, Chapter 32, carried into the Code as Section 10654, misconduct consisting of such extraneous communications is not reversible error, unless it affirmatively appear that the result was affected thereby. Thomason v. Trentham, 178 Tenn. 37, 154 S. W. (2d) 792, 138 A. L. R. 461; Hime v. Sullivan, Tenn. Sup., 221 S. W. (2d) 893.

██ There is no such showing in this case. Apart from other reasons, the statement of the defendant's servant that it was his duty to stop before making a right turn from Cleveland Street to Overton Park, an entirely different intersection, or that he always did so because at that corner there was always someone to get on or off the bus, was not relevant or material to any issue in the present case. Moreover, if it could be said to have been of any probative force at all, it was obviously more favorable to the plaintiff than it was to the defendant when the issues and evidence in the case are considered. Hence, there is no reasonable basis for

the view that the communication by juror Graham to his fellow jurors affected the result or operated in any wise to prejudice the plaintiff's rights. Cf. McAlester v. Monteverde, 22 Tenn. App. 14, 21, 115 S. W. (2d) 257.

In support of his contention the plaintiff cites a line of cases typified by Street Railway & Tel. Co. v. Simmons, 107 Tenn. 392, 64 S. W. 705; and Robilio v. Webb, 7 Tenn. Civ. App. 127. While we do not think the rule of these cases, if applicable, would require a different result, it is well enough to note that since the decision in Thompson v. Trentham, supra, they can no longer be regarded as authoritative on the particular question.

The result is, we find no reversible error in the record and the judgment is affirmed at the cost of the plaintiff.

Swepston, J., and Tipton, Sp. J., concur.