W. L. McKAMEY, SR., v. BESSIE ANDREWS.
W. L. McKAMEY, SR., v. RAY W. ANDREWS.
W. L. McKAMEY, SR., v. RAY W. ANDREWS and
BESSIE E. ANDREWS.
MOUNTAIN CITY MOTORS, etc., v. RAY W. AN-
DREWS and BESSIE E. ANDREWS.
WILLIAM LEA McKAMEY, Adm'r, etc., v. RAY W.
ANDREWS and BESSIE E. ANDREWS
—289 S. W. (2d) 704.

Eastern Section. March 15, 1955.

Petition for Certiorari denied by Supreme Court October 6, 1955.

116

Joe V. Williams, Jr., Chattanooga, for plaintiffs in error.

Wood & Harber, Chattanooga, for defendants in error.

HOWARD, J. These five tort actions grew out of a collision between two automobiles which occurred on the Lee Highway outside the corporate limits of the City of Chattanooga, on the afternoon of December 20, 1952, at about 4 o'clock. Lee Highway, a heavily traveled thoroughfare, runs east from Chattanooga to Cleveland, Athens and other points east, including the City of Knoxville. It had been raining, was misty at the time, and the 36 foot asphalt pavement was wet and slippery. One of the cars involved was driven by Ray W. Andrews, and was owned by his wife, Bessie Andrews, who was riding in the car at the time. The other car involved was owned by Mountain City Motors, a partnership consisting of W. L. McKamey, Sr., and his son, W. L. McKamey, Jr. The driver of this car was Anna McKamey, wife of W. L. McKamey, Sr., who was on her way to a nearby grocery store located on the north side of the highway. The Andrews car was traveling east on Lee highway, and the accident occurred when the McKamey car, which was traveling north, drove out of a private driveway or side street onto the highway immediately in front of the Andrews' approaching car. The estimated speed of the Andrews car was 25 miles. per hour and that of the McKamey car 10 miles per hour. The highway at the

point of the accident was straight, and the McKamey car had first stopped before pulling out onto the highway.

Both Mrs. Andrews and Mrs. McKamey were injured in the collision and both cars were damaged. Mrs. Andrews sustained a fractured left ankle and other injuries about which there was no dispute, and Mrs. McKamey sustained bruises on her left hip, left shoulder and left side of her head. At the time Mrs. McKamey was suffering from hypertension arteriosclerosis and high blood pressure, and she died three months later from a cerebral hemorrhage.

In her amended declaration the plaintiff Bessie Andrews sued the two McKameys as partners doing business as Mountain City Motors, and W. L. McKamey, Sr., individually and as administrator of his deceased wife's estate, for her personal injuries and property damages. Likewise, her husband, Ray W. Andrews, sued said defendants for damages for loss of his wife's services and for her medical bills.

In separate counter-actions W. L. McKamey, Sr., individually and as administrator of his wife's estate, sued the Andrews (1) for the loss of his wife's services, medical bills, etc., and (2) for her death, and the Mountain City Motors, a partnership, sued the Andrews for damages to its automobile driven by Mrs. McKamey.

Both declarations filed by the Andrews allege in substance that Mrs. McKamey was operating her automobile in a negligent manner without having it under control, without keeping a proper lookout ahead, and in violation of certain state statutes, and that she drove said automobile out of a "cut-off" leading from the

Chickamauga Road onto the Lee Highway in a sudden and abrupt manner, directly in front of their automobile; that at the time Mrs. McKamey was driving as the agent of the said W. L. McKamey, Sr., and Jr., and said Mountain City Motors.

To the Andrews' declarations the McKameys filed pleas of not guilty and numerous special pleas in which they denied that Mrs. McKamey was guilty of the acts of negligence alleged. They averred that the car driven by Mrs. McKamey was the property of the Mountain City Motors, a partnership, and that it had been purchased for re-sale and only loaned to her at the time, and that the car was not being used by her on business for the partnership or for either of the McKameys; that Ray W. Andrews was guilty of contributory negligence in that he was driving at a reckless rate of speed, did not have his car under control, and they likewise plead violation of certain state statutes as to speed, manner of driving, etc.

The three declarations filed by McKamey, Sr., et al., alleged facts substantially similar to the special pleas filed in their behalf, and to the declarations the Andrews filed pleas of not guilty, no special pleas having been demanded.

At the conclusion of all the evidence the McKameys' motion for directed verdicts was overruled, except as to the Mountain City Motors and W. L. McKamey, Jr., which was sustained, and the trial resulted in the following jury verdicts: For Bessie Andrews against W. L. McKamey, Sr., individually and as administrator, etc., $3,480.00; for Ray W. Andrews against said defendants, $1,000.00. In the three cases of McKamey, Sr., et al.,

against the Andrews, the jury returned verdicts for the Andrews. Thereafter, the motions for a new trial filed by McKamey, Sr., et al., in all five cases were overruled, followed by this appeal, and errors have been assigned which will hereinafter be considered.

No question is made here that the verdicts were excessive or that there was no evidence to support the verdicts. There was credible evidence from which the jury could find that Mrs. McKamey, after stopping, drove onto the highway in front of the Andrews car when it was only 25 feet away, and the jury apparently found that her negligence in so doing was the proximate cause of the accident.

■ ■ The first assignment filed in behalf of W. L. McKamey, Sr., urging that the Andrews failed to prove that Mrs. McKamey was acting as her husband's agent, must be overruled. The record shows that W. L. McKamey, Sr., testified that his wife, at the time of the accident, was on her way to McKenzie's Grocery Store where they traded regularly, to buy groceries for his family, and that the car had been turned over to her by him for this purpose and for use in visiting "some of her friends." The applicable rule is stated in 60 C. J. S., Motor Vehicles, sec. 434, p. 1080, as follows:

"Where the owner's wife is operating the motor vehicle as his servant or agent, he is liable for her negligence or wrongful conduct. In determining whether an agency relationship exists, the ordinary rules of agency apply, and the relationship of agency of the wife for her husband may be shown by express creation or may be implied from proof of conduct or circumstances reasonably creating the agency."

Assignment two complains because the trial court, over McKamey's objections, permitted four doctors to answer a hypothetical question asked them by attorneys for the Andrews as to whether the injuries received by Mrs. McKamey in the accident could have subsequently caused or contributed to causing her death three months later. It is argued that the hypothetical question was improper because it did not contain a correct statement of all the facts; that there was no evidence to support the assumption that rest, cold applications to the bruised areas and sedatives relieved Mrs. McKamey's headaches after the accident, but that the evidence showed that her headaches continued after she was discharged from the hospital and until her death. Answering the hypothetical question, it was the opinion of the four doctors that there was no causal connection between the head injury received by Mrs. McKamey in the accident and her death, but that the headaches and her death from a cerebral hemorrhage were the natural result of arteriosclerosis and extreme high blood pressure, from which she had been suffering for more than two years.

The record shows that at the time the question was asked, the objection thereto was not on the ground that "the question did not contain a correct statement of all the facts," but on the general grounds that "no human being on earth could answer that question with all those answers * * *", and "it's going into the realm of what a jury should decide in this case." Thus, the objections raised at the time the evidence was offered did not specify the ground now assumed, the ground now assumed being raised for the first time on motion for a new trial.

It is one of the cardinal rules of evidence that a general objection, if overruled, can not avail the objector

on appeal. Franklin v. State, 180 Tenn. 41, 171 S. W. (2d) 281; Pickett v. Boyd, 79 Tenn. 498; Wigmore on Evidence, Vol. 1, Sec. 18, p. 332.

■ And where the objecting party states specific reasons why the evidence offered is incompetent or inadmissible, he is bound by the reasons given, and if he gives the wrong reasons and the court overrules his objections, he is bound by the ruling. Cothron v. Cothron, 21 Tenn. App. 388, 110 S. W. (2d) 1054; Monteeth v. Caldwell, 26 Tenn. 13; Wigmore on Evidence, Vol. 1, Sec. 18, p. 339.

■ Furthermore, the jury by its verdicts found that Mrs. McKamey was guilty of negligence in the way and manner in which she was operating her car, and whether or not there was a causal connection between the accident and her death is immaterial under the verdicts.

■ ■ By assignment three it is urged that the trial judge committed error in sustaining objections interposed on behalf of the Andrews to a question asked Dr. Walker of Atlanta, Georgia, by McKamey's attorney, relative to his charges for appearing as an expert witness for the Andrews. We are unable to consider this assignment because McKamey did not object to the court's ruling sustaining the objections, nor did he take exceptions thereto. The rule is well settled that where no exception is taken at the time of the exclusion of evidence, it is waived.* Yellow Bus Line v. Brenner, 31 Tenn. App. 209. 213 S. W. (2d) 626. The rule is likewise well settled that the appellate courts will not reverse for the wrongful rejection of evidence, when the purpose of such evidence is not put in the record so that it materiality may be judged. Rice-Stix Dry Goods Co. v. Self, 20

---

* Rule apparently changed by Chapter 236, Public Acts 1955.

Tenn. App. 498, 101 S. W. (2d) 132. Moreover, the testimony of the doctors relative to Mrs. McKamey's injuries and death, and their interest or lack of interest in the cases was, as previously pointed out, rendered immaterial by reason of the verdicts of the jury.

By assignment four it is urged that the trial court committed error in permitting Mrs. Andrews, over McKamey's objections, to testify as to alleged statements made immediately following the accident by Mrs. Mc-Kamey, in the presence of several people, including Mrs. Andrews, that she, Mrs. McKamey, did not see the Andrews' car; that said statements were violative of Code, Section 9780, known as the Dead Man's Statute, which, in Newman v. Tipton, 191 Tenn. 461, 234 S. W. (2d) 994, was held to be applicable in tort actions. The trial judge ruled the statements admissible on the theory that they were part of the res gestae.

Of the five cases tried together, it appears that two of them did not involve actions for or against the administrator, these cases being Mountain City Motors v. The Andrews, and W. L. McKamey, Sr., individually, v. The Andrews, and we are of the opinion that the statements objected to were admissible in these cases. It also appears that the objections to the admissibility of the statements were directed to all the cases being tried generally and not specifically, and the trial court was not requested by the objector to instruct the jury or designate the cases in which the statements would or would not be admissible. It was the duty of the party objecting to request the Court's instruction that the statements be limited to the parties against whom they were admissible, the applicable rule being stated in Am. Jur., as follows:

"Where there are several parties, or where several cases are tried together, and evidence is offered which is competent as to one or more parties or cases and not competent as to others, a party desiring a limitation to be imposed upon the application of the evidence to the issues must raise the point specifically; a general objection is ordinarily regarded as insufficient to preserve the right of review." 3 Am. Jur., Sec. 346, Cum. Sup. p. 12.

"Where evidence is offered which is admissible against one party but not against another, the objecting party must call the court's attention specifically to the defect in the evidence as to him; if he does not do so, the admission of such evidence generally without qualification will not be deemed error on appeal, although general objection to such evidence is made." 53 Am. Jur., Sec. 142, p. 126. See also Annotation 106 A. L. R. 467.

The fifth assignment alleges misconduct on the part of three jurors, Echols, Mrs. Barkley and Mrs. Edwards. Affidavits of both Echols and Mrs. Barkley were filed in support of the motions for a new trial and both testified on the hearing of the motions.

According to juror Echols, he agreed to the verdicts but did so only because he was sick and wanted to go home, and according to Mrs. Barkley she never did agree to the verdicts, but left the decision up to God and the other eleven jurors.

It appears from the testimony of jurors Echols, Mrs. Edwards and Gensheimer, foreman of the jury, that Mrs. Barkley did agree to the verdicts before the jury left the jury room, and the record shows that all the jurors agreed to the verdicts when they were announced.

The rule in this state is well established that the affidavit of a juror with respect to what influenced him in reaching a conclusion will not be received to impeach the verdict. McAlester v. Monteverde, 22 Tenn. App. 14, 115 S. W. (2d) 257. Nor are jurors permitted to impeach their verdict and to stultify themselves by later making affidavits, the substance of which shows that they did not fairly try the case as they had taken oath to do. Act-O-Lane Gas Service Co., Inc., v. Clinton, 35 Tenn. App. 442, 245 S. W. (2d) 795; Waller v. Skelton, 31 Tenn. App. 103, 212 S. W. (2d) 690.

Regarding the alleged misconduct of the third juror, Mrs. Edwards, it appears that this juror related to the other jurors, during their deliberations, a conversation which she had heard between two of the doctors, expert witnesses for the Andrews, in the elevator of the Court House, the substance of the conversation being that they, the doctors, did not understand why the McKameys or their attorneys brought suit against the Andrews claiming that the accident was the cause of Mrs. McKamey's death, that her death could not have resulted from the accident.

From the testimony of the jurors heard, it affirmatively appears that none of them were influenced by juror Edwards' misconduct in relating the conversation, and under Code, Section 10654 this Court will not order a new trial unless it shall affirmatively appear that the alleged misconduct influenced the jury in its verdict. See Meegal v. Memphis St. Ry. Co., 34 Tenn. App. 403, 238 S. W. (2d) 519. Furthermore, the verdicts of the jury rendered the alleged error immaterial, since the complaining parties could not have recovered by reason of

the jury's finding that the decedent's negligence was the proximate cause of the accident.

Finally, under assignment six, it is urged that the trial judge committed error in charging the Andrews' theory that they were traveling on a heavily congested and favored thoroughfare at the time of the accident, and that Mrs. McKamey was negligent in failing to yield the right of way; that Mrs. McKamey having stopped before entering the highway, it was her duty to remain stopped until all traffic approaching within such proximity as to constitute an immediate hazard had cleared.

It is argued that the foregoing charge was error because there was no evidence of "stop signs" on the road or driveway used by Mrs. McKamey, or that the Andrews were driving on a favored highway.

It is conceded that Lee Highway is a public thoroughfare, and the undisputed proof showed that Mrs. McKamey stopped her car before entering said highway. However, there was a sharp conflict in the evidence on the issue of whether Mrs. McKamey entered the highway from a private driveway or from a short cut-off several feet east of this driveway. It was the theory of the Andrews that she was using the private driveway, and there was credible evidence from which the jury could affirmatively determine this fact, and we are bound by the jury's findings. Foster & Creighton Co. v. Hale, 32 Tenn. App. 208, 222 S. W. (2d) 222.

"The driver of a vehicle entering a public road, street or highway from a private road or drive shall yield the right of way to all vehicles approaching from such public road, street or highway." Section 2688 (a), Williams' Tennessee Code.

■ The rule is well stated in Blashfield's Cyclopedia of Automobile Law and Practice, as follows:

"A drive on a highway intersecting a favored thoroughfare, who has stopped as required, does not acquire a right of way immediately after stopping as against all vehicles on the favored thoroughfare which have not yet reached the intersection. It is his duty to yield not only to vehicles within the intersection, but also to approaching vehicles in such proximity thereto as to constitute an apparent and immediate hazard. He is also bound, according to some of the cases, to remain stopped until a reasonable opportunity to proceed appears." Vol. 2, Section 1001, p. 249.

This rule was recognized and approved by our Supreme Court in Perry v. Carter, 188 Tenn. 409, 219 S. W. (2d) 905, 907, in which the Court said:

"It is generally conceded that the driver on the main or arterial highway has the right of way and that the driver on the crossing road has a primary duty of caution before entering this main road. Claybrooks [Claybrook] v. State, 164 Tenn. 440, 51 S. W. (2d) 499. See also Annotations 58 A. L. R. 1199; 81 A. L. R. 185."

■ Accordingly we find no merit in this assignment.

It results that all assignments of error will be overruled and the judgments below will be affirmed at appellants' costs.

McAmis, P. J., (Eastern Section) and Hale, J., concur.