# TRAVELERS INDEMNITY CO. et al. v. RANDALL HOARD. —340 S. W. (2d) 260.

Eastern Section.   June 29, 1960.

Certiorari Denied by Supreme Court September 9, 1960.

566

Phillips & Hale, Rogersville, for plaintiffs in error.

Thomas H. Rogan, Rogersville, for defendant in error.

McAMIS, P.J.   Plaintiff Hoard sued Dan Anderson, Sheriff of Hawkins County, his deputy G. L. Strong and Travelers Indemnity Company, surety on the Sheriff's official bond, for damages growing out of the arrest of plaintiff by Deputy Strong.   There was a verdict for plaintiff for $5,000 compensatory damages and $5,000

punitive damages. On motion for a new trial the Court ordered remittiturs of $2,500 and $4,000, respectively, which were accepted without protest.

Defendants have appealed raising a number of questions, the first of which is that Deputy Strong acted prudently, under the circumstances as they appeared to him, in arresting plaintiff for interfering with a search of plaintiff's automobile.

■ Viewing the evidence in the light most favorable to the plaintiff as we are required to do, the evidence discloses the following facts and circumstances:

Plaintiff, in addition to his regular employment, conducted a junk yard of used cars on the north side of the highway going from Rogersville to Bulls Gap. His father and mother lived in another house on the same side of the highway several hundred feet to the west. A. D. Everhart, a bootlegger of note, lived just to the west of them. A hedge or fence separated the home of Everhart from that of the elder Hoards.

On the day in question plaintiff had taken Everhart in his car to Morristown to bring back a used car to plaintiff's junk yard. On the way back plaintiff drove the old car, bought in Morristown. Everhart drove the car in which they had gone to Morristown. When they returned, plaintiff drove by Everhart's home and parked the old car in his own, plaintiff's, driveway. He then walked back intending to get the other car and take it to his home. When he reached his father's home he found that Everhart had parked the car in his father's driveway, some 20 feet off the highway, and that Everhart's wife was unloading from it groceries in paper bags.

▮ At this juncture, Deputy Strong opened the back door and was searching between the seats. When challenged by plaintiff as to what he was doing there, Strong replied that he was searching the car. According to plaintiff's testimony, he then asked Strong if he had authority to make the search. According to Strong he said, "Allright then."

In any event, when Strong or another deputy took the key out of the switch and went to the rear of the car to open the trunk, according to plaintiff's testimony, he then demanded that Strong produce "a warrant before you search *my* car" and pushed the latch on the lock back down. Strong then arrested plaintiff for resisting an officer and later swore out a warrant before a Justice of the Peace for that offense. As a result plaintiff was forced to pay a fine and costs amounting to $27 or go to jail.

According to Strong's testimony he had a search warrant for Everhart's home and was engaged in searching it when Everhart drove up in plaintiff's car and parked in the driveway at the home of the elder Mr. Hoard. He says that, knowing Everhart to be a notorious bootlegger, he then crossed the fence and began searching the car Everhart had been driving for liquor believing that the car belonged to Everhart. He admits that the car was not on the Everhart premises. If plaintiff's testimony be believed, after being advised by plaintiff that the car belonged to him Strong continued the search by attempting to unlock the trunk. No contraband of any kind was found and, if plaintiff's testimony be accepted, there was no basis for searching a car which the officer knew did not belong to Everhart but did belong to plaintiff who objected to the search. It was for the jury to say

whether the search was made by permission or over plaintiff's protest and whether the officer acted oppressively in making the arrest when plaintiff in defense of his rights sought in a mild and reasonable way to prevent an unlawful search of his property. There was no error in declining to grant a new trial on the facts.

We think it was also for the jury to say, under the charge of the Court, whether the facts warrant a finding of wilful misconduct entitling plaintiff to punitive damages.

In view of the necessity of remanding the case for the reasons hereinafter shown, it is unnecessary to respond to specific criticisms of the Court's charge or the refusal to charge certain special requests tendered by defendants. We think the charge and rulings made during the trial properly left to the jury whether plaintiff committed the offense of resisting an officer engaged in the execution of lawful process and the propriety and reasonableness of Strong's conduct under all the circumstances. We are also of the opinion the substance of the special requests was contained in the general charge.

■ Defendant's final contention is that a new trial should be granted because of gratuitous and improper remarks of two of the jurors during the deliberations of the jury, as shown by the record, that all Hawkins County officers were fee-grabbers, and were in the habit of beating people up and that they themselves had been arrested when they had been guilty of no offense.

In Gertrude Koons v. Mary E. Gass, Hamilton Law, this day decided, we held that, under T.C.A. sec. 27-117, forbidding reversals for errors not found by the appellate court to have affected the result, a judgment in a

civil case will not be reversed because of casual remarks made during the deliberations of the jury on an immaterial issue and of a nature not calculated to influence the mind of an impartial juror, citing 39 Am. Jur. 95, New Trial, Section 80.

The remarks made by jurors in this case are of an entirely different nature. They attach to all Hawkins County officers, including defendants, the odium of fee-grabbing, and relate specific instances of misconduct similar to that charged by plaintiff in this case. The jury thus heard evidence on the very issue it was called upon to decide and defendants were effectually deprived of the traditional right of cross examination, as well as the right to have the Court pass upon the competency of the evidence and, if held competent, to rebut it by other evidence. To allow a verdict to stand under such circumstances would amount to a renouncement of the principles of due process and the right to be heard, after due notice, under the watchful eye of a Court. In effect it would turn the jury loose to hear what evidence it pleased and leave the injured party without means of redress.

We are well aware that a juror will not be permitted to impeach his verdict by showing that, on the evidence introduced, he did not fairly try the case or reached a decision by the wrong process of reasoning or upon a consideration of immaterial or improper matters. Colonial Baking Co. v. Acquino, 20 Tenn. App. 695, 103 S. W. (2d) 613; McAlester v. Monteverde, 22 Tenn. App. 14, 115 S. W. (2d) 257; Waller v. Skeleton et al., 31 Tenn. App. 103, 212 S .W. (2d) 690; Act-O-Lane Gas Service Co. v. Clinton, 35 Tenn. App. 442, 245 S. W. (2d)

795; McKamey v. Andrews, 40 Tenn. App. 112, 289 S. W. (2d) 704.

These cases are not controlling, however, where the jury has been guilty of positive misconduct in hearing testimony during its deliberations bearing upon the issue to be decided, especially where, as in this case, the testimony is of an inflammatory nature. Such misconduct vitiates the verdict and may be shown by the affidavits of jurors. Street Railroad, etc. v. Simmons, 107 Tenn. 392, 64 S. W. 705, and cases cited.

The judgment is reversed and the cause remanded for a new trial. Costs of appeal will be taxed to defendant in error. Costs of the Circuit Court, accrued and to accrue, will abide the result of another trial.

Howard, J., concurs.

Hale, J., did not participate in the decision of this case.