Erin L. THOMPSON, individually and by next friends, Richard S. Thompson and wife, Shari Thompson, Plaintiffs/Appellants,

v.

George R. THOMPSON, and wife, Jeanne E. Thompson, Defendants/Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Feb. 5, 1988.

Permission to Appeal Denied by Supreme Court May 2, 1988.

Michael R. Jones, Jones & Wilks, P.C., Springfield, for plaintiffs/appellants.

Henry A. Seligmann, Seligmann & Youngblood, Nashville, for defendants/appellees.

## OPINION

KOCH, Judge.

This appeal involves a child who was bitten by a dog owned by her aunt and uncle. Her mother and father filed suit in the Circuit Court for Robertson County against the owners seeking damages for themselves and for their child. A jury returned a verdict in favor of the owners of the dog. The parents of the injured child have appealed, insisting that the trial court erred by refusing to permit them to introduce proof that the dog had been destroyed after the incident. We find that the trial judge properly excluded the evidence and, therefore, affirm the judgment of the trial court.

## I.

The Thompson family has lived in Robertson County for many years. The elder Thompsons had five children. Three of the sons, Richard S. Thompson ("Dickie"), George R. Thompson ("Ronnie"), and Jerry Thompson live next to each other on Lawrence Chapel Road next to the Martin Chapel Church.

On the afternoon of October 10, 1982, Richard Thompson's wife, Shari Lynn, took their two young children to town after church to eat lunch and to run errands. Richard Thompson remained at home because he was ill. They stopped to visit at George R. Thompson's house on the way home. Shari Lynn Thompson joined the adults who were sitting on the front porch. Her two children, Ronnie (seven) and Erin (two), joined George's son who was playing in a sandbox in the front yard. Shari Lynn Thompson was preparing to leave approximately an hour later when the incident giving rise to this dispute occurred.

The jury made its decision after hearing diametrically opposed versions of what happened. George R. Thompson and his wife, Jeanne Thompson, and Jerry Thompson testified that they first became aware that something was amiss when they heard dogs fighting and Erin screaming. Each of them saw Bandit, the George Thompsons' dog, and Rusty, the Richard Thompsons' dog, fighting in the sandbox directly on top of Erin. None of them could tell which dog had bitten Erin. Shari Lynn Thompson shouted "My baby!" and jumped off the front porch. Everyone began running toward the sandbox. The dogs stopped fighting and left the sandbox when everyone started yelling at them. They found Erin laying on the bottom of the sandbox with a bloody face.

Even though Shari Lynn Thompson's description of the event in a pre-trial deposition was similar to the recollection of her brothers-in-law and sister-in-law, her testimony at trial was significantly different. She told the jury that she watched Bandit enter the yard from a neighboring field, run directly to the sandbox where Erin was playing, and attack Erin without provoca-

tion. She did not remember seeing Rusty in the sandbox. She said she ran to the sandbox and pulled Bandit off her child by the nape of his neck. She also recalled that the others present did not appear to be concerned about what happened until she started screaming.

The parties are in general agreement about what happened next. Shari Lynn Thompson began to feel faint and handed her daughter to Jerry Thompson. Jeanne Thompson gave Jerry Thompson a wet towel to hold on Erin's face to stop the bleeding. After they decided that Erin needed medical attention, George Thompson drove Shari Lynn, Erin and Jerry Thompson to Vanderbilt Hospital. Jerry Thompson sat in the front seat holding Erin while Shari Lynn sat in the back seat. During the drive to the hospital, Erin told Jerry Thompson "Dog bite me ... Rusty bite me." Jeanne Thompson went next door to tell Richard Thompson what had happened to his daughter. He drove to the hospital with her and his father.

Erin had two serious wounds but no bone or other neurological damage. The wounds were sutured, and Erin was allowed to return home that evening. Erin now has visible scars on her left cheek and jaw even though her wounds have healed satisfactorily. Her plastic surgeon has recommended that cosmetic surgery be delayed until she is older.

Richard and Shari Lynn Thompson filed this action against George and Jeanne Thompson on October 10, 1983. In the first trial held on November 15, 1985, a jury returned a $500 verdict for Erin. The verdict was set aside when the trial court granted the defendants a new trial. The second trial was held on June 23, 1986, and the jury returned a verdict in the defendants' favor.

## II.

### The Admissibility of Evidence Concerning Erin's Statements About How She Was Bitten

█ The plaintiffs insist that the trial court erred by permitting Jerry Thompson to testify that Erin told him that her dog, Rusty, had bitten her. They did not object to the introduction of this testimony in the trial court and, therefore, have waived their right to challenge its admissibility in this Court. *State v. Bennett,* 549 S.W.2d 949, 950 (Tenn.1977); *Ehrlich v. Weber,* 114 Tenn. 711, 717–18, 88 S.W. 188, 189 (1905); *Baxter v. Vandenhoevel,* 686 S.W. 2d 908, 911 (Tenn.Ct.App.1984); D. Paine, *Tennessee Law of Evidence* § 185 (1974).

## III.

### The Exclusion of Evidence that the Defendants Put Their Dog to Sleep

Persons suing for injuries caused by a dog bite must prove three things. First, they must prove that the defendant owned the dog. Second, they must prove that the defendant's dog caused the injuries. Third, they must prove that the defendants knew or should have known about the dog's dangerous propensities. *Alex v. Armstrong,* 215 Tenn. 276, 285, 385 S.W.2d 110, 114–15 (1964).

█ The plaintiffs attempted to introduce evidence that the defendants had put Bandit to sleep to prove that it was Bandit, not Rusty, that bit Erin. The trial court held that the evidence was inadmissible for that purpose. We agree.

The general rule is that evidence of subsequent remedial measures or of offers of remedial assistance is not admissible in negligence actions. *See* 2 J. Wigmore, *Evidence in Trials at Common Law* §§ 283 & 283a (Chadbourn Rev.1979). This type of evidence has little relevance to the issue of fault, and permitting its introduction deters defendants from making post-accident repairs. *See* R. Lempert & S. Saltzburg, *A Modern Approach to Evidence* 187–189 (1977).

Tennessee courts have adopted the general rule for both evidence of subsequent remedial measures and for offers of remedial assistance. *Illinois Cent. R.R. v. Wyatt,* 104 Tenn. 432, 433–34, 58 S.W. 308, 308–09 (1900) (remedial measures); *Belote v. Memphis Dev. Co.,* 51 Tenn.App. 423, 444, 369 S.W.2d 97, 106 (1962) (remedial

measures); *Meegal v. Memphis St. Ry.*, 34 Tenn.App. 403, 407–08, 238 S.W.2d 519, 520–21 (1950) (offers of assistance).

Other courts have recognized and applied the remedial measure rule in cases involving animal bites. For example, the Minnesota Supreme Court, reasoning that "such after-the-fact action does not prove before-the-fact scienter," held that evidence that the defendants had their cat destroyed after it bit the plaintiff was not admissible. *Clark v. Brings*, 284 Minn. 73, 169 N.W.2d 407, 412 n. 6 (1969).

■ Like the Minnesota Supreme Court, we think that the general rule excluding evidence of subsequent remedial measures should be applied in cases of this nature. Therefore, unless there is another valid reason for the introduction of the evidence, we find that the trial court properly excluded it.

Evidence inadmissible for one purpose may be admissible for another. Accordingly, there may be circumstances when evidence of subsequent remedial measures will be admissible. *See* 2 J. Wigmore, *Evidence in Trials at Common Law* § 238, at 185–87 (Chadbourn Rev.1979). The most common reason for admitting this evidence is to prove that the defendant owned or controlled the thing that caused the injury. Thus, in *Meegal v. Memphis St. Ry.*, 34 Tenn.App. 403, 407, 238 S.W.2d 519, 520–21 (1950), this Court noted that proof of remedial measures would be admissible if "the control or identity of the apparatus causing the injury" were at issue.

■ However, evidence of subsequent remedial measures becomes relevant only when the defendant has raised the issue of control and ownership. *See* E. Cleary, *McCormick's Handbook on the Law of Evidence* § 275, at 817 (3d ed. 1984). The defendants never disputed that they owned Bandit or that he was under their control when Erin was bitten. Thus, they never opened the door sufficiently to justify the plaintiffs' attempt to introduce evidence concerning what they did with the dog after the incident.

## IV.

### Restriction of the Plaintiffs' Closing Argument

■ The jury was aware that Bandit had been destroyed because of an unresponsive answer given by Jerry Thompson during cross examination.[1] Prior to closing arguments, plaintiffs' counsel stated that he desired to remind the jury during his argument that Bandit had been destroyed. The trial court refused to permit him to do so.

Control over oral argument is left to the discretion of the trial judge. *Painter v. Toyo Kogyo of Japan*, 682 S.W.2d 944, 951 (Tenn.Ct.App.1984); *Crowe v. Provost*, 52 Tenn.App. 397, 412, 374 S.W.2d 645, 652 (1963). We find that the trial court's action was justified in light of its ruling on the admissibility of the evidence concerning the destruction of the dog.

## V.

### Evidentiary Support for the Jury's Verdict

Finally, the plaintiffs insist that the "evidence as presented to the jury preponderates in favor of the Plaintiff." This, of course, is not the standard of review by which appellate courts review the factual basis of a jury's verdict.

When jury verdicts are involved, our task is to determine whether there is any material evidence to support the jury's verdict. *Harper v. Watkins*, 670 S.W.2d 611, 631 (Tenn.Ct.App.1983); *Lassetter v. Henson*, 588 S.W.2d 315, 317 (Tenn.Ct.App.1979). *See also* Tenn.R.App.P. 13(d). We do not reweigh the evidence. *Electric Power Bd. v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn.1985).

■ We have reviewed the evidence using the proper standard of review and have

---

1. Thompson stated: "I don't think I ever put the blame on Bandit. I think there was enough doubt there that if it had been my dog, I wouldn't have put him to death." He was then asked: "But your brother, Ronnie, put the dog to sleep, didn't he?", to which he replied: "Well, somebody did."

determined that there is material evidence to support the jury's verdict. Therefore, we find that the trial court did not err when it denied the plaintiffs' motion for a new trial.

### VI.

The judgment of the trial court is affirmed, and the case is remanded for whatever further proceedings may be necessary. The costs of this appeal are taxed to Richard S. Thompson and Shari Lynn Thompson and their surety for which execution, if necessary, may issue.

TODD, P.J. (M.S.), and CANTRELL, J., concur.