# 96 DTA 47

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE PONCE Y AIBONITO
## PANEL I

ALBERTO BARTOLOMEI VAZQUEZ
Demandante-Apelado

v.

LUIS RAUL RODRIGUEZ Y CARMEN LUISA LOPEZ FEBUS
Demandados-Apelantes

Núm. KLCE-95-00431

San Juan, Puerto Rico, a 20 de marzo de 1996

Panel integrado por su presidente, Juez Sánchez Martínez
y los Jueces Córdova Arone y Segarra Olivero

Sánchez Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La controversia que plantea primordialmente este recurso es la siguiente:

¿Procede, a tenor con la Regla 32 de Procedimiento Civil, 32 L.P.R.A. Ap.III, R. 32, el examen físico y mental de un litigante que reclama el cumplimiento jurídico de un contrato verbal sólo porque en una deposición dicha parte expresó no recordar los detalles de la contratación ni algunas fechas de eventos memorables de la vida?

# I

Luis Raúl Rodríguez (en adelante Rodríguez), trabajó durante veinte años --de 1972 a 1992-- como propagandista médico en las empresas del Sr. Alberto Bartolomei (en adelante Bartolomei), hasta que se incapacitó para trabajar debido a que sufrió un derrame cerebral. El 27 de junio de 1994, Rodríguez, a través de uno de sus abogados, Lic. Marcos Rodríguez Frese, le envió una carta a Bartolomei donde le reclamaba una deuda que éste mantenía con él y con su esposa. En la carta lo invitaba a que sostuvieran una reunión para discutir el asunto. ■ La carta no especificaba la suma adeudada ni el concepto de la misma. Bartolomei, le contestó la carta al licenciado Rodríguez Frese, a través de su abogado. En su contestación le confirmaba una conversación telefónica que ambos habían sostenido y le indicaba que tanto él como su cliente Bartolomei estarían de vacaciones, por lo que le contestarían posteriormente lo alegado en la carta.

Bartolomei no contestó la carta sino que instó una acción de sentencia declaratoria y daños y perjuicios contra Rodríguez y su esposa. En la demanda, Bartolomei hizo referencia a la carta que éstos le habían cursado y negó que existiera deuda alguna. Reclamó daños por la suma de cinco millones de dólares por los demandados haberle hecho una reclamación injusta y por haberle causado severas angustias y daños a su reputación personal y empresarial.

Rodríguez y su esposa contestaron la demanda y entablaron reconvención y demanda contra terceros contra distintas corporaciones del demandante. En la reconvención, Rodríguez y su esposa aseveraron que alrededor de diciembre de 1974 Rodríguez y Bartolomei habían acordado que el primero continuaría con sus funciones, y otras que se le adjudicasen, a cambio de un sueldo básico y del 10 por ciento del valor y las utilidades de la corporación principal y de sus subsidiarias, terceras demandadas, utilidades que se acumularían hasta que fuera conveniente liquidarlas; que bajo dicho arreglo él había trabajado durante veinte años, desistiendo incluso de estudiar medicina; que Bartolomei pretendía desentenderse del acuerdo; y que había separado a Rodríguez de la empresa pagándole únicamente la compensación que dispone la ley. Según la reconvención, el valor de la participación acumulada de Rodríguez y su esposa en el capital de las corporaciones terceras demandadas asciende a cuatro millones de dólares. En la demanda contra tercero contra varias corporaciones, Rodríguez y su esposa aducían que dichas entidades eran propiedad y *alter ego* del demandante, quien las había utilizado y aún utilizaba como esquema fraudulento para incumplir la ley.

Trabada la controversia, Bartolomei le tomó una deposición a Rodríguez. Varios días después Bartolomei le solicitó al tribunal que le ordenara a Rodríguez que le entregara copia del expediente de incapacidad ante la Corporación del Fondo del Seguro del Estado, ante la Administración de Seguridad Social federal y ante la compañía que le había expedido un seguro privado de incapacidad. Bartolomei fundamentó su solicitud en que Rodríguez se había negado a producir dichos expedientes médicos sobre incapacidad durante la deposición. Rodríguez se opuso por estimar que dichos expedientes eran impertinentes al caso. Ante este señalamiento, Bartolomei adujo que la reconvención se basaba en un contrato verbal y al no existir algún otro documento que avalara la existencia del contrato para probar el mismo, se dependía exclusivamente de la memoria de Rodríguez, razón por la cual su condición mental y física eran pertinentes al caso. El tribunal *a quo* le ordenó a Rodríguez

poner a la disposición de Bartolomei los documentos solicitados por éste.

No conforme con esto, Bartolomei solicitó posteriormente del tribunal que le ordenara a Rodríguez someterse a un examen físico y mental conducido por un neurólogo escogido por el demandante. Fundamentó su solicitud en la misma razón en la que basó su solicitud de los récords médicos, a saber, que para probar el acuerdo verbal Rodríguez sólo contaba con su testimonio, por lo que su estado mental se convertía en prueba. En su solicitud, Bartolomei también señaló que el privilegio médico-paciente no aplicaba al caso de autos, pues el mismo tiene un alcance limitado según la Regla 26 de Evidencia, 32 L.P.R.A. Ap. IV, R.26, y debe interpretarse restrictivamente, a tenor con la Regla 35 de Evidencia, 32; L.P.R.A. Ap. IV, R.35.

El tribunal recurrido le ordenó a Rodríguez someterse a un examen físico y mental que sería llevado a cabo por el Dr. Heriberto Acosta, en Hato Rey, a costa del demandante. Bartolomei le informó ese hecho al tribunal y solicitó que se le ordenara a Rodríguez comparecer a una nueva cita médica.

El tribunal *a quo* emitió la orden solicitada por Bartolomei y apercibió a Rodríguez que sí está vez incumplía la orden se le impondrían sanciones drásticas, incluyendo la prohibición de que pudiese presentar prueba que dependiera de su memoria.

Así las cosas, Rodríguez le solicitó mediante carta la renuncia de representación legal a sus abogados, Lic. Marcos Rodríguez Frese y Lic. Norman Pietri Castellón. En la carta, Rodríguez les indicó que solicitaran del tribunal la paralización de los procedimientos por un término no menor de 45 días para él poder conseguir una nueva representación legal y que le informaran de ésto a los abogados del demandante ya que estaba próxima la fecha pautada para que él se hiciese el examen físico y mental ordenado por el tribunal *a quo*, en respuesta a la solicitud del demandante. Los abogados de Rodríguez presentaron la moción sobre renuncia de representación legal. En vista de que Rodríguez había solicitado la renuncia de su representación legal y la paralización de los procedimientos, éste no compareció a la cita médica pautada para el 4 de abril de 1996, y así se lo informó por escrito al abogado de Bartolomei.

El tribunal *a quo* señaló una vista para el 28 de abril de 1996 a los fines de discutir varias mociones incluyendo la de renuncia de representación legal de Rodríguez y una moción de Bartolomei para informar la nueva incomparecencia y desacato a la orden del tribunal. Antes de que se celebrara la vista señalada para el 28 de abril de 1996, Bartolomei le solicitó al tribunal que emitiera una orden para que Rodríguez acudiera a una nueva cita médica (la tercera).

Llegado el día de la vista, 28 de abril de 1996, el tribunal *a quo* aceptó la renuncia de la representación legal de los abogados de Rodríguez pero le ordenó a éste someterse al examen neurológico el 9 de mayo de 1996. El mismo día de la cita médica dos abogados distintos presentaron una moción para asumir la representación legal del co-demandado Rodríguez y solicitaron un término de 90 días para relacionarse con el expediente y replicar a varias mociones que estaban pendientes. Dos días después le solicitaron al tribunal recurrido que dejara sin efecto las órdenes relacionadas con el examen físico y mental de Rodríguez. El tribunal *a quo* declaró sin lugar la solicitud por haberse presentado en una fecha posterior·a la fecha de la cita médica y ordenó la eliminación de las alegaciones de Rodríguez por desobedecer su orden del 28 de abril de 1996. Rodríguez solicitó reconsideración de dicha orden pero el tribunal *a quo* la denegó. Rodríguez recurrió mediante *certiorari* y señala que el tribunal *a quo* incidió en error (1) al denegar su solicitud para que se dejaran sin efecto las órdenes para hacerse el examen físico y mental, y (2) al imponer la sanción drástica de eliminar sus alegaciones por no haber comparecido a la referida cita médica. Bartolomei ha comparecido a oponerse al recurso. Por los fundamentos que se exponen a continuación, expedimos el auto de *certiorari* y revocamos la orden recurrida.

## II

La Regla 32.1 de Procedimiento Civil, 32 L.P.R.A. Ap. IV, R.32.1, dispone como sigue:

*"En un pleito **en el cual el estado mental o físico de una parte,** incluyendo el grupo sanguíneo de ésta, **estuviere en controversia,** la sala ante la cual esté pendiente el pleito podrá ordenar a dicha*

*parte que se someta a un examen físico o mental por un médico. Se podrá dictar la orden solamente mediante moción, previa notificación a la parte que hubiere de ser examinada y a todas las demás partes, y en ella se especificarán la fecha, hora, lugar, modo, condiciones y el alcance del examen y el médico o médicos que habrán de hacerlo."* (Subrayado nuestro.)

El criterio rector al examinar si es de aplicación dicha regla es si el estado físico y mental de la parte está en controversia. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, **Publicaciones JTS, Inc.**, San Juan, 1979, pág. 166. En el caso de autos, el demandante Bartolomei basó su solicitud de examen neurológico a Rodríguez en lo siguiente: que Rodríguez alegaba la existencia de un contrato verbal suscrito entre éste y el demandante en 1973 que le daría derecho a cobrar del demandante cuatro millones de dólares; que Rodríguez había admitido en su deposición que no contaba con documento alguno que avalara la existencia del contrato en cuestión y que, para probar el mismo, éste dependía exclusivamente de su memoria; que Rodríguez en su deposición no recordaba las fechas de sus matrimonios, aun cuando el segundo de éstos había ocurrido hacia tres meses, ni recordaba la fecha de nacimiento de sus dos hijos, así como tampoco había podido recordar si había suscrito múltiples documentos o procedimientos en su práctica cotidiana en el trabajo, con los que fue confrontado, ni recordaba cuál había sido su último sueldo ni los detalles y circunstancias del supuesto contrato.

Bartolomei añadió en su solicitud de orden para el examen médico que el acuerdo verbal sólo podría probarse con el testimonio de Rodríguez porque éste había señalado en su deposición que sólo él y Bartolomei supieron de la existencia de dicho acuerdo y que para recordar dicho evento distante el estado mental de Rodríguez debía estar en condiciones óptimas, por lo que se convertía en prueba que, según la Regla 18 de Evidencia, 32 L.P.R.A. Ap. IV, R.18, podía hacer que ese hecho fuese más probable de lo que sería sin tal evidencia. De igual forma, el demandante también adujo que en un caso de esta naturaleza no se aplicaba el privilegio médico-paciente, ya que dicho privilegio tenía un alcance limitado, según la Regla 26 de Evidencia, *supra*, y que debía interpretarse restrictivamente, a tenor con la Regla 35 de Evidencia, *supra*. Específicamente, el demandante aludió al inciso (b) de la Regla 26, que excluye la existencia del privilegio médico-paciente cuando:

*"(1) La cuestión en controversia concierne la condición del paciente... en una acción en la que el paciente trata de establecer su capacidad, o en una acción de daños a base de la conducta del paciente que constituye delito.*

..................

*(8) Se trata de una acción en que la condición del paciente constituye un elemento o factor de la reclamación o defensa del paciente..."*

Luego de hacer referencia a la Regla 26 de Evidencia, *supra*, Bartolomei señaló que después de revisar las circunstancias en este caso, estimaba necesario que Rodríguez se sometiera a un examen físico y mental conducido por un profesional de la salud para evaluar su condición actual y los efectos que podía tener sobre sus recuerdos una lesión cerebral como la sufrida por él. En su escrito de oposición a la expedición del *certiorari*, el demandante aduce que Rodríguez puso su estado mental en controversia al reclamar sobre la base de recuerdos distantes luego de un evento que, según su admisión y la prueba médica, trastocó seríamente su capacidad para recordar.

### III

Hemos examinado los fundamentos aducidos por el demandante para basar la solicitud del examen médico de Rodríguez, a tenor con la Regla 32 de Procedimiento Civil, *supra*, así como los incisos (1) y (8) de la Regla 26(b) de Evidencia, *supra*, y consideramos que los mismos son inaplicables al caso de autos. Aquí no se justifica el examen físico y mental del co-demandado Rodríguez debido a que el estado físico o mental de dicha parte no está en controversia. La reconvención en este caso no es una acción por negligencia donde el co-demandado Rodríguez reclama haber sufrido daños físicos o mentales, donde estaría en controversia su estado físico o mental. Tampoco estamos ante un caso donde una de las partes alega como defensa su condición física o mental en una reclamación en su contra ni estamos ante un caso donde se cuestiona la capacidad de una de las partes como elemento de una reclamación o defensa en la acción.

La reconvención de Rodríguez alude a un convenio verbal establecido entre dicha parte y Bartolomei. A Rodríguez le tocará en su día probar que dicho convenio existió, ya sea con su testimonio o con alguna otra prueba documental que pueda presentar, de existir la misma. Bartolomei alega que Rodríguez tiene su memoria afectada y, por lo tanto, no podría probar que existió un acuerdo entre las partes. No obstante, de la deposición tomada a Rodríguez, sometida por el demandante, surge que en un gran número de páginas Rodríguez testificó sobre el acuerdo en cuestión. ■ Asímismo, el demandante en su escrito de oposición señala que de la lectura de la deposición y de las cartas que escribe Rodríguez se desprende que la falta de memoria se manifiesta selectivamente. Oposición, a la pág. 9.

No se debe confundir el aspecto de credibilidad -que en su día el tribunal aquilatará respecto al testimonio que brinde Rodríguez- con el de la capacidad que éste tiene para testificar. En *Pueblo v. Torres Figueroa*, ___ D.P.R. ___ (1990), **90 J.T.S. 95**, a la pág. 7900, el Tribunal Supremo cita con aprobación al profesor Chiesa sobre este asunto:

*"Quien pretenda impedir que alguien declare, por razón de incapacidad, debe establecer que tal persona no puede expresarse --por sí o mediante intérprete-- de modo que pueda ser entendida, o no entiende su obligación de decir la verdad. Así lo exige la Regla 37. Por supuesto, en casos de probar que existió el acuerdo verbal locura crasa, será muy fácil persuadir al tribunal de que la persona no cualifica. Bajo la regla 37 el tribunal debe atender a criterios generales de confiabilidad, teniendo en mente los factores cruciales de percepción, memoria y narración a que alude la Regla 44(B)(3). Si el testigo tenía capacidad para percibir los hechos, recordarlos y luego narrarlos inteligiblemente en corte, debe permitirse su declaración salvo que el tribunal estime que el testigo no entiende la seriedad de un procedimiento judicial, que no entiende su obligación de decir la verdad. El hecho de que el testigo hubiere estado loco o declarado judicialmente incapaz no lo excluye, de suyo, según las reglas 36 y 37."*

El hecho de que Rodríguez no pueda recordar muchos detalles de eventos acontecidos durante los veinte años que trabajó para Bartolomei, así como tampoco datos usualmente memorables como la fecha en que contrajo matrimonio o la fecha de nacimiento de sus hijos, incidirá sobre la cuestión de la credibilidad de su testimonio y su habilidad para demostrar con preponderancia de la prueba la existencia de su reclamación. Ya Bartolomei tendrá su oportunidad de contrainterrogar a Rodríguez para fines de impugnar la credibilidad de su testimonio, según lo establece la Regla 44 (B)(3). ■ Sin embargo, la falta de recuerdo de por sí no es la controversia en este caso, es decir, dicha falta de recuerdo no hace que esté en controversia el estado mental o físico de Rodríguez en este caso en particular, puesto que lo que se intenta establecer es la existencia de un contrato verbal, y no la existencia de daños y perjuicios o angustias mentales, o la capacidad o incapacidad de Rodríguez resultante de las acciones u omisiones de Bartolomei.

A partir de la adopción de las nuevas Reglas de Procedimiento Civil de 1979, el examen físico y mental de una parte es el único mecanismo de descubrimiento de prueba que requiere previamente de una orden del tribunal. Esto es así ya que dicho mecanismo es el único que interviene con la integridad del cuerpo y la intimidad de la persona. Hiram A. Sánchez Martínez, *El examen físico y mental bajo la nueva Regla 32 de Procedimiento Civil,* 50 Rev. Jur. U.P.R. 271 (1981). Aunque no se requiere que el promovente demuestre justa causa, tratándose de una intervención con la integridad del cuerpo y la intimidad de la persona, los tribunales deben constatar efectivamente que el estado físico y mental de una de las partes está en controversia antes de proceder a ordenar el examen físico o mental de una parte. En el caso de autos, al solicitarse ambos exámenes, físico y mental, el tribunal *a quo* debió hacer un escrutinio mayor para constatar que efectivamente el estado físico y mental del co-demandado Rodríguez estaba en controversia. El primer error se cometió.

## IV

El segundo apuntamiento de error cuestiona la decisión del tribunal *a quo* de eliminar las alegaciones del co-demandado Rodríguez como sanción por haber incumplido en tres ocasiones la orden del tribunal de someterse al examen físico y mental solicitado por el demandante. Al evaluar este asunto debemos recordar que en la vista del 28 de abril de 1996 el tribunal aceptó la renuncia de los abogados del co-demandado Rodríguez pero coetáneamente le ordenó a éste que se sometiera al examen neurológico el 9 de mayo de 1996. Al emitirse esta orden Rodríguez no contaba con

representación legal que pudiese cuestionar la decisión del tribunal. Rodríguez no había manifestado su renuncia a continuar con los procedimientos sin estar asistido de abogado.

Por otro lado, ante una nueva representación legal del co-demandado Rodríguez, el tribunal de instancia debió haber considerado la solicitud para que se dejara sin efecto la orden en cuanto al examen médico y no haberla rechazado por el hecho de que se había presentado en una fecha posterior a la fecha en que debía llevarse a cabo el examen. Las órdenes interlocutorias no advienen finales y firmes, por lo que siempre están sujetas a ser reconsideradas, ya que la Regla 47 de Procedimiento Civil, 32 L.P.R.A. Ap. IV, R. 47, no aplica del mismo modo a sentencias finales que a resoluciones que no lo son. Hiram A. Sánchez Martínez, *La reconsideración de resoluciones u órdenes interlocutorias y de sentencias finales,* XV Rev. Jur. U.I.A. 367 (1981), a la pág. 378. Por tal razón, un tribunal retiene facultad en todo momento para corregir una orden errónea puesto que contra ésta no transcurre ningún término jurisdiccional. Cuevas Segarra, *Práctica Procesal Puertorriqueña - Procedimiento Civil, supra,* a la pág. 260.

En el caso de autos, el tribunal *a quo* debió haber evaluado los argumentos expuestos en la moción de oposición al examen médico presentada por los nuevos abogados del co-demandado Rodríguez, y reconsiderar su decisión anterior. Cf. *Torres Cruz v. Municipio de San Juan,* 103 D.P.R. 217 (1975).

Con estos antecedentes, se expide el auto de *certiorari* y se revoca la orden recurrida.

Sonia Pacheco Román
Secretaria General

### ESCOLIOS 96 DTA 47

**1.** El texto de la carta en cuestión es el siguiente:

*"27 de junio de 1994*

*Sr. Alberto S. Bartolomei Vázquez*
*Apartado postal 813*
*Gurabo, PR 00778*

*Estimado señor Bartolomei:*

*Don Luis Raúl Rodríguez Rodríguez y doña Carmen Luisa López Febus han contratado los servicios del subscribiente y los del licenciado Norman Pietri Castellón para reclamar a usted la deuda que usted mantiene con ellos por participación en sus empresas.*

*Antes de radicar la demanda y demás documentos convenientes a la protección de los intereses de nuestros clientes, interesamos sostener una reunión con usted, si lo estima a bien, a fin de examinar las posibilidades de transigir este asunto. Esa reunión parece de la mayor importancia, pues la ventilación de la demanda ante el tribunal traería necesariamente a discusión informaciones delicadas que debían permanecer bajo la mayor discresión [sic]. Si por nada más, la reunión serviría, cuando menos, para que conozcamos la versión que usted pueda tener de los hechos que nos han referido nuestros clientes, de forma que podamos considerarlos para la decisión definitiva.*

*A fin de coordinar esta reunión, invito a usted a comunicarse con el subscribiente por el teléfono del membrete, durante las horas de oficina, de lunes a viernes. Si no recibiéramos alguna respuesta de usted en un plazo razonable, tendríamos que presumir que no interesa a usted nuestra invitación y actuaríamos por consecuencia.*

*Asegurándole nuestra estimación, sin más de momento quedamos,*

*Atentamente,*

*(FIRMADO)*
*Marcos Rodríguez-Frese*

*Sa. López Febus*
*Sr. Rodríguez Rodríguez*
*Lcdo. Pietri Castellón"*

**2.** A manera de ejemplo, citaremos sólo algunas de las páginas de la deposición del co-demandado Rodríguez donde éste testifica sobre el acuerdo verbal entre ellos. Primera deposición, a las págs. 50-52, 57-59, 65-66, 77-78, 160-162, 167, 173-174, 189-190, 192, 246-253, 260-261. Segunda deposición, a las págs. 102-104.

**3.** La Regla 44 (B)(3) establece como sigue:

*"(B) Medidas de Impugnación. La credibilidad de un testigo podrá ser impugnada o sostenida mediante cualquier evidencia pertinente al asunto de su credibilidad, es decir, a la veracidad o mendacidad, incluyendo los siguientes aspectos:*

............

*(3) Grado de capacidad del testigo para percibir, **recordar** o comunicar cualquier asunto sobre el cual declara."* (Subrayado nuestro.)