IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 2, 2002 Session

## IN RE: ESTATE OF ADAM JAMES BURRESS

**Appeal from the Probate Court for Scott County**
**No. 652-P     James L. Cotton, Jr., Judge**

**FILED FEBRUARY 4, 2003**

**No. E2002-00320-COA-R3-CV**

---

This appeal involves several issues regarding the disposition of certain assets of and relating to the estate of Adam James Burress ("Decedent"), who died intestate in a one-car accident on March 5, 2001. The Trial Court imposed an equitable lien on the insurance proceeds of an automobile collision policy in favor of Eva Burress, the Decedent's grandmother, in the amount which the Court found she loaned to Decedent in order to purchase the automobile, which was totally destroyed in the accident. The Appellant, Sue Michelle Burress ("Widow"), Decedent's wife, argues on appeal that the Trial Court erred in failing to award her the insurance proceeds, and in ruling that payment of the funeral expenses should take precedence over the spousal support allowances and all other claims. The Appellees, Roy and Eva Burress, Decedent's grandparents, and Jeff and Linda Burress, Decedent's parents, have appealed the Court's ruling that the mobile home in which Decedent and Widow lived prior to their separation was not permanently affixed to the grandparents' land and thus was the Widow's personal property. We modify the judgment so as to provide that the Widow's statutory year's support allowance is exempt from claim against the estate for reimbursement of funeral expenses. We affirm the judgment of the Trial Court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed in Part
and Modified in Part; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Janette L. Taylor, Oneida, for the Appellant, Sue Michelle Burress

Johnny V. Dunaway, LaFollette, for the Appellees, Jeff Burress, Linda Burress, Roy Burress and Eva Burress

**OPINION**

Decedent and Widow were married on May 24, 1997. At the time of the marriage, Decedent was eighteen years old and in his junior year of high school, and Widow was nineteen years old. One child was born to the marriage on February 13, 1999. According to Widow's testimony, in November of 1998 she and the Decedent moved into a mobile home which was purchased and placed upon property belonging to Roy and Eva Burress, Decedent's grandparents. She testified that the funds to purchase the mobile home were provided by Roy and Eva.[1] During the course of the marriage, as Decedent was going to school and working part-time, and Widow remained at home to take care of their child, Eva provided money to enable them to pay their bills and expenses.

In March of 1997, Eva gave the couple six thousand dollars in order to buy a Ford Probe. The Probe was titled in both Decedent and Widow's name. In June of 2000, Eva cashed in a certificate of deposit in the amount of $17,534.61, and provided that money to the couple for them to purchase a new automobile. The exact nature of the transaction is in dispute; Eva testified that it was a loan to the Decedent, which he promised to pay back after school and when he was able. Widow testified that the money was a gift to the couple.

On June 12, 2000, the couple bought a new Ford Mustang. The purchase price was $17,334.65, which they paid in a lump sum by check. The Mustang was titled in Decedent's name only, and he was its primary driver, as he used it to commute back and forth to school. Widow primarily drove the Probe.

The Decedent filed a complaint for divorce on January 25, 2001. In the complaint he alleged that the date of the parties' "final separation" was January 5, 2001. Decedent continued to drive the Mustang, and Widow to drive the Probe, during their separation. On March 5, 2001, while Decedent and Widow were separated and the divorce action pending, the accident occurred which resulted in Decedent's death and the destruction of the Mustang. Decedent died intestate.

On March 13, 2001, the Complaint in the present action was filed by Jeff and Linda Burress, Deceased's parents, and Roy and Eva Burress. At trial, the Plaintiffs presented the testimony of Christopher Duncan, the insurance agent who had underwritten the automobile insurance policy on the Probe and Mustang. Mr. Duncan testified that on February 2, 2001, Widow came to his office and requested that Decedent's name be deleted from the policy, and that the Mustang be deleted from the policy's coverage. Mr. Duncan made the requested changes, and sent a letter to Decedent informing him that the Mustang would no longer be insured after February 12, 2001.

Jeff and Linda made arrangements to secure another insurance policy for their son's Mustang, and the new policy, issued by State Farm Insurance Company, went into effect on or about February 12, 2001. Jeff and Linda paid the first premium by a check dated February 12, 2001.

---

[1] Our use of the first names of the parties should not be construed as any disrespect, but rather is for ease of reference.

After Decedent's death on March 5, 2001, a dispute arose concerning who should have the right to direct the funeral and burial arrangements. By order entered March 5, 2001, the Circuit Court for Scott County ruled that "since Adam Burress [Decedent] and Michelle Burress were separated and not living together at the time of death, the circumstances would dictate that his father be permitted to direct the funeral and burial arrangements." After the funeral, Jeff filed a claim against the estate for reimbursement of funeral expenses in the amount of $12,716.91. He also filed a claim for reimbursement of the first insurance premium payment to State Farm in the amount of $246.42, which the Trial Court granted. The State Farm policy contained a death benefit provision in the amount of $5,000, which the Court awarded to Widow.

Following a bench trial, the Court held that Eva had loaned the money to Decedent and Widow for the purchase of the Mustang, and the Court imposed an equitable lien on the collision insurance proceeds in the amount of $17,334.65. The Court ordered that "this equitable lien shall be satisfied by the Clerk paying to Eva Burress, the sum of Fifteen Thousand Seven Hundred Forty-Four Dollars [$15,744.00] from the funds paid into the Clerk's Office by State Farm, which represents the collision coverage proceeds under the policy."

Widow appeals, raising the following issues which we restate from those set out in her brief:

1. Whether the Trial Court erred by imposing an equitable lien on the insurance proceeds in Eva's favor.

2. Whether the Court's ruling allowing Eva and Jeff to testify about an oral transaction with the Decedent violated T.C.A. 24-1-203 (the "Dead Man's Statute"), and the hearsay rule.

3. Whether the Court erred in ruling that "payment of the funeral expenses is a priority claim to be paid ahead of the spousal allowance and all other claims."

In addition, Roy and Eva have raised the issue of whether the Trial Court erred in ruling that the mobile home in which the Decedent and Widow lived was not permanently affixed to Roy and Eva's realty, and thus was Widow's personal property.

As noted earlier, the parties disagree about whether the $17,534.61 provided by Eva for the purchase of the Mustang was a loan or a gift. Widow testified that it was a gift to the couple. Eva, on the other hand, testified as follows regarding the agreement between Decedent and her:

A: All right. I was going to pay for the car for him, and he [Decedent] said, "I don't have time to get off from work and get over there before the dealership closes, and I will send Michelle [Widow] out and she'll get the cash and bring it to me," and he said he would–he didn't want–he wasn't one to take handouts or you could give it to him, you know, so I said, "Well, it will be a loan." And he said it would. He said, "Mamaw," he said, "when I finish college and I get back on my feet," he said, "I'll pay you back." That's what he said.

Q: Did you expect him to pay you back?

A: Yes, I did.

Q: Did you intend for him to pay you back?

A: Yes. Because I'd already bought him one.

Q: Now, the one that you had already bought him, that was the Probe that we were talking about?

A: That's right.

Jeff, Decedent's father, testified that he was present during the conversation between Eva and Decedent regarding the money for the Mustang, and that Decedent told him that "Mamaw's going to loan me the money, and when I get on my feet out of pharmacy school I'm paying her back."

Widow objected to both Jeff and Eva's testimony on hearsay grounds, and she also argued that admission of the testimony violated T.C.A. 24-1-203, known as the "Dead Man's Statute," which provides as follows:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party.

Widow argues on appeal that the Trial Court erred in overruling her objections and allowing the testimony of Jeff and Eva. This Court, in the case of *Baker v. Baker*, 142 S.W.2d 737 (Tenn.Ct.App. 1940), set forth the general principle of construction of the Dead Man's Statute, noting that "[t]he courts of this State have taken the view that our statute must be strictly construed as against the exclusion of the testimony and in favor of its admission." The *Baker* court continued its analysis as follows:

> Having in mind that the general purpose of the statute undoubtedly is to protect the estates of decedents from fraudulent and fictitious claims and the strict construction adopted by our court against the exclusion of the testimony, we think it a reasonable view that the statute does not contemplate a proceeding, the result of which can neither increase nor diminish the assets of the estate but concerns only the manner in which the assets will be distributed.

*Baker*, 142 S.W.2d at 744.

Eva cites the above rule and argues that, under the circumstances of this case, the collision insurance proceeds will not pass into the estate irrespective of which party receives the funds. As Eva pointed out to the Trial Court, Widow's position is that the proceeds should pass directly to her, not to the estate. Eva argues that, in the event that this Court finds and upholds an equitable lien in her favor, then the proceeds, which were paid into court by State Farm, should go directly to her. Thus, Eva argues, under either party's theory of the case, and regardless of which party prevails and receives the funds, they will not pass into the hands of the estate's personal representative and will never become a part of the estate.

By its express terms, the Dead Man's Statute applies only in cases "by or against executors, administrators, or guardians." In keeping with our general principle of strictly construing the statute in favor of the admission of testimony, this Court has ruled that where an action is brought against a surviving party in his or her individual capacity only, the statute does not apply. *McKamey v. Andrews*, 289 S.W.2d 704 (Tenn. Ct. App. 1955); *Hooper v. Neubert*, 381 S.W.2d 569 (Tenn. Ct. App. 1963).

In the present case, the Plaintiffs did not file an action against the estate, but chose instead to proceed directly against State Farm and Widow in her individual capacity. She is not before the Court in her representative capacity; therefore the Dead Man's Statute is inapplicable under the facts of this case.

Regarding Widow's hearsay argument, Plaintiffs assert that Decedent's statements come under Tenn. R. Evid. 804(b)(3), the "statement against interest" exception to the hearsay rule. This rule, which requires that the declarant be unavailable as a witness, provides that statements of the following nature are admissible:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

We agree with the Trial Court that Decedent's voluntary acknowledgment of a debt and his assertion of his obligation to repay a loan to Eva was a statement against his pecuniary interest, and we find no error in the admission of this testimony.

We next address Widow's contention that the Trial Court erred by imposing an equitable lien on the proceeds of the collision insurance policy. In *Greer v. American Security Ins. Co.*, 445 S.W.2d 904 (Tenn. 1969), the Supreme Court stated as follows regarding the equitable lien doctrine:

> An equitable lien is a right, not recognized at law, to have a fund or specific property, or its proceeds, applied in whole or in part to the

payment of a particular debt. It is not an estate or property in the thing itself, nor is it a right to recover the thing; that is, it is not a right which may be made the basis of a possessory action, but is merely a charge upon it.

\*                    \*                    \*

"Even in the absence of an express contract, a lien, based upon the fundamental maxims of equity, may be implied and declared by a court of chancery out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings."

There must be an intent to make the particular property, real or personal, a security for the obligation; but, that intent being clear, equity will treat an agreement to give a mortgage or lien, as effective to create an equitable lien, where money has been parted with on faith that there would be a compliance.

Thus it is apparent that, even in the absence of an express contract, an equitable lien may be created by implication, based upon the intention and circumstances of the parties. An equitable lien cannot, however, be based merely upon moral obligations alone, but must find a basis in established equitable principles.

*Greer*, 445 S.W.2d at 907 (quoting *Milam v. Milam*, 200 S.W. 826 (Tenn. 1918); internal citations omitted).

In the present case, although there is also evidence to the contrary, there is ample evidence in the record from which the Trial Court could reasonably have concluded that the Decedent and Eva orally agreed that she would provide the funds to pay for the Mustang in return for a promise to repay her by Decedent when he finished school and "got on his feet" financially.

The Trial Court made a finding that "in this case, we have a marital relationship that was completely broken, of two parties that were estranged." We believe it is significant that at the time of the accident, divorce proceedings were well under way and the parties were living separately. The Trial Court, after finding that there was a loan from Eva to Decedent, provided this further reasoning in support of his imposition of an equitable lien in favor of Eva:

The troubling part here that draws the Court back is the equitable consideration. The Court should not be loose and free in its application of equity, especially in overpowering or superseding what might be matters of statutory or contract law. But the equitable consideration that continues to draw the Court back and that is compelling is this act of [Widow] in cancelling the policy. This is a troubling aspect of the facts of this case. And the question comes should [Widow] have benefits from policy coverages that she

-6-

attempted to cancel out. After all, I think we have to realize that had she had her way, had [Widow] had her way in her intentions at that time there would have been absolutely no coverage on the Mustang whatsoever.

\* \* \*

What we have here is a situation where [Widow] would be benefitting from a policy coverage she tried to cancel, a policy coverage which she had no part in paying, and a policy coverage in the end which she tried to terminate. This is a matter of equity that the Court cannot overlook. To allow [Widow] to benefit under a policy under these arrangements would, in the Court's opinion, violate the precepts of equity and be unjust enrichment.

While the Court's factual analysis is not precisely correct in that Widow did not attempt to cancel the State Farm insurance policy, it remains true that she had no involvement in procuring or paying for the State Farm policy, the need for which was precipitated by her actions in cancelling Decedent's former automobile insurance policy. We agree with the Court's finding that, under the peculiar facts of this case, to allow Widow to receive the proceeds of the collision policy unencumbered by an equitable lien in favor of Eva, would result in an inequitable windfall and unjust enrichment.

The Supreme Court, in discussing the equitable lien doctrine, has noted that "one of the maxims underlying the doctrine is that equity regards as done that which ought to be done." *Milam v. Milam*, 200 S.W. 826 (Tenn. 1918). We find no error in the Trial Court's ruling in favor of Eva on this issue.

Widow presents the argument that the Court erred in allowing the policy proceeds to be encumbered by an equitable lien because Eva was not listed on the policy as a loss payee, and she, as a surviving spouse, was so listed. The State Farm policy at issue provides the following regarding payment of proceeds under the policy:

We will pay any amount due:

1. to the ***insured***,
2. to a parent or guardian if the ***insured*** is a minor or an incompetent ***person***;
3. to the surviving ***spouse***; or
4. at our option, to any ***person*** or organization authorized by law to receive such payment.

(Emphasis in original.) In our view, Eva properly falls into the category of a "person. . . authorized by law to receive such payment." We also note in passing that the term "spouse" is defined in the policy as "your husband or wife who resides primarily with you."

Widow further asserts that the Trial Court should have found that the Mustang was the family vehicle, to which she as surviving spouse is entitled to receive as exempt property. The Trial Court, however, ruled that the Ford Probe, which was titled in both Decedent and Widow's name, was the family vehicle, and we find no error in this judgment.

Finally, Widow argues that the Court erred in holding that "payment of the funeral expenses is a priority claim to be paid ahead of the spousal allowance and all other claims." The Court granted Jeff Burress a judgment against the estate in the amount of $12,716.91 as reimbursement for his expenditures for funeral expenses.

T.C.A. 30-2-317[2] provides the following, in relevant part, regarding the priority of claims against an estate:

> (a) All claims or demands against the estate of any deceased person shall be divided into the following classifications, which shall have priority in the order shown:
> (1) First: Costs of administration, including, but not limited to, premiums on the fiduciary bonds and reasonable compensation to the personal representative and the personal representative's counsel;
> (2) Second: Taxes and assessments imposed by the federal or any state government or subdivision thereof;
> (3) Third: Reasonable funeral expenses. . .

T.C.A. 30-2-102, the statute providing for a year's support allowance for the surviving spouse, provides as follows in relevant part:

> (a) In addition to the right to homestead, an elective share under title 31, chapter 4, and exempt property, the surviving spouse of an intestate. . .is entitled to a reasonable allowance in money out of the estate for such surviving spouse's maintenance during the period of one (1) year after the death of the spouse, according to such surviving spouse's previous standard of living, taking into account the condition of the estate of the deceased spouse.
> * * *
> (d) The allowance authorized by this law is the absolute property of the surviving spouse for such uses and *shall be exempt from all claims* and shall not be taken into the account of the administration of the estate of the intestate or seized upon any precept or execution.

---

[2]T.C.A. 30-2-317 was subsequently amended by the General Assembly to reorder the priority of reasonable funeral expenses from third to second priority. This amendment, which has no bearing on the disposition of this case, became effective on June 19, 2001.

-8-

(Emphasis added). Because T.C.A. 30-2-317 lists funeral expenses as a "claim" against the estate, the year's support allowance for a surviving spouse is exempt from a claim for reimbursement of such expenses. It was thus error for the Trial Court to order that "[p]ayment of the funeral expenses is a priority claim to be paid ahead of the spousal allowance. . ."

The Plaintiffs, in their appeal, present the issue of whether the Trial Court erred in ruling that the mobile home in which Decedent and Widow lived, and which was placed on the land of Roy and Eva Burress, was not permanently affixed to the realty and thus was Widow's personal property. The Trial Court made the following findings regarding this issue:

> First, that the physical additions to the mobile home which plaintiffs argue, among other things, as factors indicating the mobile home is permanently affixed to the realty, were essentially a standard array of routine attachments such as tie-downs, anchors and concrete block support pillars in compliance with HUD regulations, all customarily used to stabilize and secure the placement of mobile homes,
>
> Further, that the porches and decks, sharing common attachment to the mobile home and realty, were in fact originally purchased along with the mobile home as personalty, by the title owners,
>
> Further, that the various utility hook-ups for the mobile home are routine and customary for all installations in the trade, and do not, in themselves, constitute measures permanently affixing the mobile home to the realty,
>
> Further, that the skirts and underpinnings came with original purchase of the mobile home as personalty, and that there is nothing remarkable or permanent about the landscaping and site preparation suggesting a merger of personalty and realty, which essentially was a cleared area for the mobile home, a gravel parking area and driveway for ingress/egress, and a concrete pad for placement of the central air system,
>
> Further, that there was proof in the record that the mobile home was severable and removable en masse from the realty,
>
> Further, the proof indicated that had Roy and Eva Burress, in the course of providing the purchase money for the mobile home, wished to retain ownership of the mobile home, they easily could have done so by simply listing themselves as owners on the certificate of title in the same way, according to testimony, they were retaining title ownership to the underlying realty until, in their opinion, marriage was stable, whereby the Court finds the mobile home was a gift from Roy and Eva Burress to [Decedent and Widow],
>
> Further, the intent of the owners of the mobile home, as presented in the proof of this case, is at best disputed and

controverted, whereby the plaintiffs have not met the burden of proof necessary to prove by a preponderance of the evidence that title owners of the mobile home intended that it become a permanent and inseverable part of the realty. . .

The Court concluded and ordered that "the mobile home is personal property, and not an inseverable part of or permanently affixed to the realty, and therefore, is solely and exclusively owned by [Widow], by operation of law and as surviving spouse of the decedent."

Our review of the record reveals that these findings are fully supported by the testimony and other evidence in the record, and that there is scant, if any, evidence to the contrary. We find no error in the Trial Court's ruling that the mobile home is not permanently affixed to Roy and Eva's real property, and in the Court's awarding it to Widow.

For the foregoing reasons the judgment of the Trial Court is affirmed in part and modified in part, and the cause remanded for such further proceedings, if any, as may be necessary and for collection of costs below, which are, as are costs on appeal, adjudged one-half against Appellant, Sue Michelle Burress, and one-half against Appellees, Roy Burress, Eva Burress, Jeff Burress, and Linda Burress.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE