IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 19, 2017 Session



## COREY M. SEARCY, ET AL. v. WALTER AXLEY, ET AL.

**Appeal from the Circuit Court for Benton County**
**No. 14-CV-27      Charles C. McGinley, Judge**

_____

## No. W2017-00374-COA-R3-CV

_____

Parents filed suit against dog owners following their son's injury from a dog bite that occurred at the owners' home. The trial court granted the dog owners' motion for summary judgment, concluding that parents failed to show that owners knew or should have known of their dog's dangerous propensities as required by Tennessee Code Annotated section 44-8-413. Finding no error, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which ANDY D. BENNETT, and ARNOLD B. GOLDIN, JJ., joined.

Christopher V. Boiano and Stephanie A. Boiano, Hendersonville, Tennessee, for the appellants, Corey M. Searcy and Demetria Searcy.

Charles M. Purcell and Andrew V. Sellers, Jackson, Tennessee, for the appellees, Walter Axley, Irene Axley, and Melissa Axley.

## OPINION

### FACTS

This case arises from personal injuries incurred by a minor child from a dog bite. On July 24, 2013, Demetria Searcy and her minor son traveled to Walter and Irene Axley's (together, "the Axleys") home to visit with the Axleys' daughter, Melissa Axley.[1] Demetria Searcy and Melissa Axley attended cosmetology school together and

---

[1] Melissa Axley was originally joined with her parents as a defendant in this case. However, the trial judge granted summary judgment to all claims, dismissing Melissa Axley from the suit. It does not

were friends. After remaining outside to pet some goats and chickens upon their arrival, Mrs. Searcy, her son, and Melissa Axley ventured to the Axley home. The group approached the residence, and the Axleys' dog, an Australian Shepherd named Ruby, was lying on the front porch. As the group crossed the front porch, the child reached down and petted Ruby on the head and back without incident.

Later, inside the home, Mrs. Searcy sat in a recliner and her son sat in her lap. The Axleys were also sitting in the living room. While in the living room, the Axleys' dog approached Mrs. Searcy and her son, jumped up, and put her paws on their lap. The two petted the dog. At this point, Mr. Axley told the dog to get down a few times; however, after the dog did not listen, Mr. Axley struck the dog on its rear.[2] The dog then got down from Mrs. Searcy and her son's lap and went into an adjoining room.

The dog returned to the living room a little while later.[3] After returning to the living room, the dog immediately went back to Mrs. Searcy and her son and, again, put her paws on their laps. As they did before, the two petted the dog. This time, however, the dog suddenly bit the child in the face causing severe injuries. Due to the injuries, Mrs. Searcy and son left the Axleys' home immediately seeking medical attention.

PROCEDURAL HISTORY

On July 23, 2014, Corey M. Searcy and Demetria Searcy, as parents and next friend of their minor child (together "the Searcys"), filed a complaint against Mr. Axley, Mrs. Axley, and Melissa Axley.[4] The complaint alleged two theories of liability: (1) negligence per se pursuant to Tennessee Code Annotated section 44-8-413 (the "Dog Bite Statute") and (2) common law negligence due to Mr. Axley striking and provoking the dog to bite the minor child.

On September 15, 2014, the Axleys filed an answer denying liability in both causes of action. Additionally, the Axleys filed a motion for summary judgment on February 17, 2016, arguing that the Searcys could not show that the Axleys knew or should have known of their dog's dangerous propensities. The Searcys submitted a response in opposition to the motion for summary judgment on May 4, 2016.

---

appear that Appellants are appealing the trial court's dismissal of Melissa Axley as defendant. For clarification, throughout this Opinion, references to Mrs. Axley are to Irene Axley.

[2] There is some factual dispute as to how hard Mr. Axley struck the dog. Appellants claim Mr. Axley struck the dog hard enough that she yelped. The Axleys, however, claim that the dog did not yelp when Mr. Axley struck her.

[3] There is also some dispute as to how long the dog stayed in the adjoining room. It is undisputed, however, that the dog was out of the living room for at least thirty seconds or more.

[4] *See supra* note 1.

The trial court held a hearing on the Axleys' motion for summary judgment on May 12, 2016, and at its conclusion, the trial judge orally granted the Axleys' motion on the ground that the Axleys negated an essential element of the Searcys' claim. On June 27, 2016, an order was entered dismissing all counts in the complaint. The Searcys filed a motion to alter or amend judgment on July 21, 2016, arguing that the common law claim should have survived summary judgment. The court held a hearing on this issue on December 5, 2016. The trial judge entered an order denying the motion on January 10, 2017. The Searcys timely filed an appeal on January 30, 2017.[5]

ISSUES PRESENTED

The Searcys raise two issues on appeal. The issues, taken from the Searcys' brief, are whether the trial court erred in granting summary judgment regarding the Axleys' (1) "strict liability claim raised pursuant to Tennessee Code Annotated section 44-8-413 when it found no issue of material fact existed regarding whether the Axleys knew or should have known of the dog's dangerous propensities;" and (2) "common law negligence claim by incorrectly applying its reasoning for dismissal of the statutory cause of action as also requiring dismissal of the negligence claim."

STANDARD OF REVIEW

Here, the trial court granted summary judgment in favor of the Axleys. The Tennessee Rules of Civil Procedure provide that summary judgment is appropriate when the record establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. According to our supreme court:

> when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense.

***Rye v. Women's Care Center of Memphis, MPLLC***, 477 S.W.3d 253, 264 (Tenn. 2015) (italics omitted). Additionally, the party seeking summary judgment must do more than "make a conclusory assertion that summary judgment is appropriate on this basis." *Id.* Instead, the movant must support its motion with "'a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial.'" *Id.* (quoting Tenn. R. Civ. P 56.03). After a motion for summary judgment is made, the non-moving party must file a response to each fact presented by the moving party

---

[5] We note that the Searcys are represented by different counsel in this appeal.

"'showing that there is a genuine issue for trial.'" *Rye,* 477 S.W.3d at 264 (quoting Tenn. R. Civ. P. 56.03). In other words, the non-moving party must "demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Rye*, 477 S.W.3d at 264. Therefore, "'if there is a dispute as to any material fact or any doubt as to the conclusion to be drawn from that fact'" this Court must deny the motion for summary judgment. *Meyers v. First Tennessee Bank*, 503 S.W.3d 365, 373 (Tenn. Ct. App. 2016) (quoting *Garner v. Coffee Cty. Bank*, No. M2014-01956-COA-R3-CV, 2015 WL 6445601 at *4 (Tenn. Ct. App. Oct. 23, 2015) (quoting *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn.1993)).

To determine whether the trial court correctly granted summary judgment, this Court must "'view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor.'" *Meyers*, 503 S.W.3d at 384–85 (quoting *Thomas v. Carpenter*, No. M2005-00993-COA-R9-CV, 2005 WL 1536218, at *3)(citing *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997)). Lastly, [w]e review the trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Rye*, 477 S.W.3d at 250 (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)).

ANALYSIS

I.

The Tennessee Supreme Court generally described liability for dog bite cases under the common law stating:

> [T]he general rule . . . [regarding] liability of owners or keepers of domestic animals for injuries to third persons is that the owner or keeper of domestic animals is not liable for such injuries, unless the animal was accustomed to injure persons, or had an inclination to do so, and the vicious disposition of the animal was known to the owner or keeper

*Missio v. Williams*, 167 S.W. 473, 474 (Tenn. 1914). In other words "where an animal is accustomed or disposed to injure persons, and the owner or keeper has notice or knowledge of that fact, he is liable for any injury which such animal may do to another person." *Id.* Additionally, "[k]nowledge of the owner or keeper that the dog is vicious is sufficient to sustain liability, without showing that it had ever bitten any one." *Id.* Therefore, dog owners "are liable for injuries done by [the dog], even without notice of their vicious propensities, if the animals are naturally mischievous; but, if they are of a tame and domestic nature, there must be notice of the vicious habits." *Id.* Although *Missio* was decided over a century ago, the common law in Tennessee has undergone little change. *See Moore v. Gaut*, No. E2015-00340-COA-R3-CV, 2015 WL 9584389, at *3 (Tenn. Ct. App. Dec. 30, 2015) ("Our review of subsequent appellate decisions in dog

- 4 -

bite cases indicates that the common law has not substantially changed since [*Missio*].”); ***Thompson v. Thompson***, 749 S.W.2d 468, 470 (Tenn. Ct. App. 1988) (explaining that an essential element in a dog bite claim is that plaintiffs “must prove that the defendants knew or should have known about the dog’s dangerous propensities.”); ***Fletcher v. Richardson***, 603 S.W.2d 734, 734 (Tenn. 1980) (“The basic key to recovery of damages for injuries caused by a dog is the knowledge of the owner or keeper that the animal is vicious or has mischievous propensities.”); ***Alex v. Armstrong***, 385 S.W.2d 110, 114 (Tenn. 1964) (“[W]hether or not the owner of a dog has notice of its vicious or mischievous propensities . . . is essential to common law liability.”); ***Henry v. Roach***, 293 S.W.2d 480, 481–82 (Tenn. Ct. App. 1956) (quoting *Missio*, 167 S.W. at 474). Although most dog bite claims under the common law have required that the claimant show the owner’s knowledge of their dog’s dangerous propensities, a few cases have allowed liability even in the absence of such knowledge, based upon theories of general negligence or failure to control. ***Mayes v. LaMonte***, 122 S.W.3d 142, 145 (Tenn. Ct. App. 2003)(“We believe this case is governed by general negligence principles, not that aspect of dog bite law which imposes liability on an owner where there are “injuries resulting from known vicious tendencies or propensities.”); ***McAbee v. Daniel***, 445 S.W.2d 917, 925 (Tenn. Ct. App. 1968)(holding that the requirement that dog owner knew of dog’s dangerous propensities as “required by *Missio* . . . is not required in the case at bar where there is proof of negligence of the part of the defendant . . . in failing to properly control the dog.”).

In 2007, however, the Tennessee General Assembly enacted Tennessee Code Annotated section 44-8-413, regarding liability for injuries from dog bites. Under the Dog Bite Statute, a dog owner “may be held liable regardless of whether the dog has shown any dangerous propensities or whether the dog owner knew or should have known of the dog’s dangerous propensities” if (1) the owner is unable to keep the dog under reasonable control at all times; or (2) the dog is running at large. Tenn. Code Ann. § 44-8-413(a)(1)–(2). In other words, a dog owner is held strictly liable if the owner’s dog injures a person because the owner failed to exercise reasonable control over the dog or the dog is running at large. *See id.* However, the statute provides certain exceptions, most notably, the residential exception. *See* Tenn. Code Ann. 44-8-413(c)(1).

The residential exception states that if an owner’s dog injures a person while that person is on the owner’s property, the claimant must prove that the owner knew or should have known of the dog’s dangerous propensities to recover damages from the injury. *See id.* The statute, in pertinent part, states,

> If a dog causes damage to a person while the person is on residential, farm or other noncommercial property, and the dog’s owner is the owner of the property, or is on the property by permission of the owner or as a lawful tenant or lessee, in any civil action based upon such damages brought against the owner of the dog, the claimant shall be required to establish that

the dog's owner knew or should have known of the dog's dangerous propensities.

*Id.* Therefore, in cases where a dog causes injury at the home or property of that dog's owner, "the statute clearly retains and codifies the common law requirement that a claimant 'establish that the dog's owner knew or should have known of the dog's dangerous propensities.'" *Gaut*, 2015 WL 9584389, at *5 (quoting Tenn. Code Ann. §44-8-413(c)(1)).

Applying the clear language in the applicable section of the Dog Bite Statute, it is undisputed in this case that the Axleys' dog injured the child while on the Axleys' property. This case therefore clearly falls under the purview of section (c)(1) of the Dog Bite Statute. Accordingly, the statute requires that the Searcys prove that the Axleys knew, or should have known, of their dog's dangerous propensities to recover for their minor son's injuries.

The Searcys' argue, however, that there are two "separate and distinct claims" pleaded in their complaint and that the elements in each claim "do[] not rely upon the other." Furthermore, the Searcys contend that "while Tenn. Code Ann. § 44-8-413 codified claims for strict liability which formerly existed in common law, the statute left common law negligence claims untouched; they contend these claims remain separate and distinct causes of action." Respectfully, we cannot agree. Rather, we conclude that the above rule is applicable to "any" claim involving damage caused by a dog on its owners' property.

The General Assembly has the constitutional and legislative power to change the common law of the state of Tennessee. *Heirs of Ellis v. Estate of Ellis*, 71 S.W.3d 705, 712 (Tenn. 2002)(citing *Lavin v. Jordan*, 16.S.W.3d 362, 368 (Tenn. 2000)). However, "'[w]ithout some clear indication to the contrary, [the court] simply will not presume that the legislature intended to change the common law by implication.'" *State v. Howard*, 504 S.W.3d 260, 270 (Tenn. 2016)(quoting *Heirs of Ellis*, 71 S.W.3d at 712). Therefore, the statute may not alter the common law "any further than the statute declares or necessarily requires." *Shore v. Maple Lane Farms, LLC.*, 411 S.W.3d 405, 423 (Tenn. 2013). Accordingly, we must determine if the Dog Bite Statute "clearly indicat[es] . . . that the legislature intended to change the common law by implication." *Howard*, 504 S.W.3d at 270.

When interpreting a statute, the role of this Court "is to assign a statute the full effect of legislative intent without restricting or expanding its intended scope." *Frazier v. State*, 495 S.W.3d 246, 248 (Tenn. 2016)(citing *State v. Springer*, 406 S.W.3d 526, 533 (Tenn.2013); *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn.2010)). To determine the legislature's intent, "we first look to the plain language of the statute, giving the statute's words their natural and ordinary meaning." *State v. Gibson*, 506 S.W.3d 450, 455 (Tenn.

2016)(citing ***State v. Davis***, 484 S.W.3d 138, 145 (Tenn. 2016)); ***State v. Smith***, 484 S.W.3d 393, 403 (Tenn. 2016). "'When a statute is clear, we apply the plain meaning without complicating the task, and simply enforce the written language.'" ***Gibson***, 506 S.W.3d at 456 (quoting ***Chartis Cas. Co. v. State***, 475 S.W.3d 240, 245 (Tenn. 2015)). Thus, "[w]hen th[e] words [of the statute] are clear and unambiguous, we enforce the statute as written and need not consider other sources of information." ***Gibson***, 506 S.W.3d at 455–56 (citing ***Frazier***, 495 S.W.3d at 249).

Despite the more than ten years since the enactment of section 44-8-413, few cases have analyzed this statute and no cases have considered the question presented in this case: whether section 44-8-413 abrogates any common law claim that may have existed prior to the statute's enactment in which the claimant in a dog bite case was not required to show that the owner knew or should have known of the dog's dangerous propensities. *See **Moore v. Gaut***, No. E2015-00340-COA-R3-CV, 2015 WL 9584389, at \*5 (Tenn. Ct. App. Dec. 30, 2015) (affirming summary judgment where the injured party could not show that the owner knew or should have known of the dog's dangerous propensities, but not specifically addressing whether the statute abrogated other types of common law dog bite claims); ***Ragland v. Morrison***, No. W2013-00540-COA-R3-CV, 2013 WL 4805624, at \*2 (Tenn. Ct. App. Sept. 10, 2013) (citing section 44-8-413 with regard to the question of whether the defendant should be responsible for certain dogs when he was not the dogs' owner, but ultimately vacating the judgment and remanding for the trial court to state its legal reasoning for the grant of summary judgment). As such, this is an issue of first impression.

Given the lack of authority on this issue, we find guidance in decisions considering whether a statute abrogated the common law in other situations. For example, in ***Ellithorpe v. Weismark***, 479 S.W.3d 818 (Tenn. 2015), the Tennessee Supreme Court recently considered a similar question with regard to the Tennessee Health Care Liability Act ("THCLA"). In 2011, the General Assembly amended the Tennessee Medical Malpractice Act "by removing all reference to 'medical malpractice' from the Tennessee Code and replacing them with 'health care liability' or 'health care liability action' as applicable." *Id.* at 826. An additional section was added to the Code defining "health care liability action" as "*any civil action* . . . alleging that a health care provider or providers have caused an injury related to the provision of, of failure to provide, health care services to a person, *regardless of the theory of liability on which the action is based*." Tenn. Code Ann. § 29-26-10(a)(1)(first emphasis added). In ***Ellithorpe***, the parties disputed as to whether certain claims fell within the statute or remained governed by the common law and therefore not subject to the THCLA's stringent pre-suit notice requirements. *See id.* at 824. The court held that Tennessee Code Annotated section 29-26-101

establishe[d] a clear legislative intent that *all* civil actions alleging that a
covered health care provider or providers have caused an injury related to

the provision of, or failure to provide health care services be subject to . . . [certain] requirements, regardless of any other claims, causes of action, or theories of liability alleged in the complaint.

*Id.* at 827. Thus, the statute controlled all actions involving health care liability; no common law claim involving that type of conduct remained after the passage of the statute. *Id.*

Similar to the THCLA, the Dog Bite Statute states that where a dog injures a person on its owner's property, the claimant "shall be required to establish that the dog's owner knew or should have known of the dog's dangerous propensities" in "any civil action" for damages brought against the dog's owner. Tenn. Code Ann. §44-8-413(c)(1). The language of the Dog Bite Statute, like the language of the THCLA, requires that claimants *in any civil claim* prove that the owner knew or should have known of the dog's dangerous nature. Further, upon a plain reading of the statute, giving the word "any" its natural and ordinary meaning, we conclude that the statute applies to each and every civil suit falling within the specific category of cases dealt with by section (c)(1). Because we have determined that the words of the statute are clear and unambiguous, our analysis may end here. *Gibson*, 506 S.W.3d at 455–56 (citing *Frazier*, 495 S.W.3d at 249). As such, section (c)(1) of the Dog Bite Statute abrogates common law claims falling within its parameters, just as the THCLA abrogates the common law claims in health care liability cases. For the foregoing reasons, we hold that where the Searcys claim that a dog injured the child while on its owners' property, they must comply with the substantive requirements of section 44-8-413(c). We therefore turn to address whether the undisputed evidence in the record establishes that the Searcys failed to meet their burden under that statute.

II.

Because the Searcys' claim falls within the ambit of section (c)(1) of the Dog Bite Statute, we must now determine whether summary judgment on this issue was appropriate. Here, the Axleys' statement of undisputed material facts contains the following relevant facts: (1) while the child was petting Ruby, she gave no indication that she was uncomfortable with the contact or otherwise showed aggression to the child; (2) Ruby bit the child without warning; (3) Ruby had never bitten anyone before; (4) there was no proof to show that the Axleys knew or should have known of the dog's dangerous propensities. We conclude that these facts, if true, show that the Axleys did not know nor should they have known that the dog had dangerous propensities for purposes of section 44-8413(c). *See Rye*, 477 S.W.3d at 264 (holding that a moving party may shift the summary judgment burden to the non-moving party by "demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim").

The burden therefore shifted to Appellants to show that the Axleys in fact knew or should have known of the dog's dangerous propensities. This court has previously described this burden as requiring that not only the dog owner knew of the dangerous disposition of the dog, but that the "'injuries result[ed] from [such] known vicious tendencies or propensities.'" *Mayes*, 122 S.W.3d at 145 (quoting *McAbee*, 445 S.W.2d at 925). Thus, "it must be shown [by the non-moving party] that the animal had vicious or dangerous propensities and it must be shown further that the owner knew of such propensities and that the injury complained of resulted therefrom." *Wells v. Beach*, 315 S.E.2d 23 (Ga. App. 1984) (citing *Connell v. Bland*, 177 S.E.2d 833 (1970)). Stated another way, "a dog owner's liability must be predicated solely upon his knowledge that the errant animal has the propensity to cause the *specific type of harm from which the cause of action arises*." *Wells*, 315 S.E.2d at 23. Consequently, "[t]he question in each case is whether the notice was sufficient to put the owner on his guard and to require him, as an ordinarily prudent man, to anticipate the injury which has actually occurred." 13 AM. JUR. 2d *Knowledge of Animal's Vicious Propensities* § 3.

As an initial matter, we note that despite the fact that the Searcys disputed many of the factual allegations in the Axleys' statement of undisputed material facts, the Searcys failed to submit any specific evidence to show a genuine dispute of fact. For example, the Searcys disputed the Axleys' allegation that Ruby did not show discomfort or aggression toward the child prior to the bite but rather bit the child without warning. Later in their response to the Axleys' statement of undisputed facts, however, the Searcys concede that "[t]here was no indication that Ruby was going to bite [the child]. She showed no aggression and was friendly [until Mr. Axley struck her]." Likewise, an affidavit filed by Mrs. Searcy stated that "[t]here was no warning sign or indication that the dog intended to bite [the child]." The Searcys also disputed that Ruby had never bitten anyone before. Specifically, the Searcys stated that "[t]here is no evidence presented to prove or disprove Ruby has ever bitten anyone prior to this incident." We disagree. The Axleys' statement of undisputed facts cites Mr. Axley's deposition testimony on this issue, which specifically states that Ruby has never bitten anyone prior to this incident. The only support for the Searcys' assertion that this fact was disputed was Mrs. Searcy's affidavit stating that she did not have prior knowledge sufficient to "definitively" state whether Ruby had attacked another person. Respectfully, Mrs. Searcy's statement regarding her lack of knowledge is insufficient to negate Mr. Axley's unequivocal statement that the dog had in fact never bitten anyone prior to this incident. *See Gaut*, 2015 WL 9584389, at *5 (affirming summary judgment where Defendant "testif[ied] in his affidavit that his dog had never bitt[en] or attacked anyone before [biting] Plaintiff" and Plaintiff failed to present any evidence creating a genuine issue of material fact.); *Eden v. Johnson*, No. 01A01-9603-CV-00141, 1996 WL 474428, at *2 (Tenn. Ct. App. Aug. 21, 1996)(affirming summary judgment when Defendants "produced an affidavit in support of their motion for summary judgment attesting to the fact that the dog had never bitten anyone since they had owned him, nor had the dog otherwise exhibited any dangerous

- 9 -

propensities" and the Plaintiffs "offered no evidence to rebut the Defendants affidavit as to the issue of notice.").

The Searcys contend, however, that they presented specific evidence to negate the Axleys' allegation that no evidence was presented to show the Axleys' knowledge of the dog's dangerous propensities. Specifically, the Searcys alleged that the Axleys

> should have known of the possibility of a bite because [Mr. Axley] smacked Ruby on the rear because she wouldn't listen when he was telling her to get down, at least two or three times. He has also shown concern when he did not want Ruby to jump on [the Searcys] because he did not want anything to happen.

The Searcys therefore contend that they met their burden to show the Axleys' knowledge of the dog's dangerous propensity because of the incident wherein Mr. Axley hit the dog. It is undisputed that Mr. Axley hit the dog after he jumped onto the chair and put its paws on Mrs. Searcy's and her son's laps. It is disputed, however, the nature and extent of the incident, such as whether the dog "yelped" following the contact. Mr. Axley explained his action in hitting the dog by noting that the dog had previously scratched others such as himself while jumping and that the contact was to make the dog get down and prevent only that type of conduct. Every witness testified that other than jumping on and scratching people, the dog had shown no other vicious or dangerous behavior.

Indeed, every person whose deposition is included in the record noted that the dog was simply not acting dangerous or aggressive on the day of the incident. Based upon the totality of the evidence, we cannot conclude that this single incident establishes that the Axleys knew the dog was dangerous, or were on notice that the dog might bite someone. The only evidence the Searcys presented is that the Axleys had notice that their dog might jump on or scratch Mrs. Searcy and her son. Respectfully, we cannot conclude that this evidence is sufficient to show that the Axleys were on notice, constructive or actual, that their dog would bite the Searcys' son. Rather, even viewing the evidence in the light most favorable to the Searcys, we must conclude that this evidence merely shows that Mr. Axley was concerned about his guest being merely scratched, not that he had any knowledge that his dog was dangerous, as this evidence simply does not rise to the level of other cases in which knowledge has been found. *See **Dykeman v. Heht***, 52 A.D.3d 767, 769–70 (N.Y. App. Div. 2008)(holding that there was a genuine issue of material fact as to whether the dog owner knew of should have known of dog's vicious propensities because "upon each of [the child's] two arrivals at the defendant's home, the dog growled, barked, snarled, and bared its teeth directly at her and her family."). Thus, the Searcys did not meet their burden of providing evidence that the Axleys knew or should have known that their dog would have vicious propensities. As a result of the Searcys' failure to provide sufficient evidence to this effect, the Axleys successfully "negat[ed] an essential element of the [the Searcys'] claim[,]" *Rye*, 477 S.W.3d at 264,

and the trial court properly granted the Axleys' motion for summary judgment. The trial court's order granting the Axleys' motion for summary judgement is, therefore, affirmed.

III.

Finally, the Searcys' argue that "a dog's playfulness or mischievousness can be [considered] a 'dangerous propensity'" for the purposes of determining whether a dog owner had notice of the dog's vicious propensities in dog bite cases. Unfortunately, the first time this argument was presented was in the Searcys' brief to this Court. It is well established that the Court of Appeals' "purpose is to correct errors made by trial courts, not make initial rulings on arguments not presented to the trial court." *Estate of Cunningham v. Epstein Enterprises LLC.*, No. W2015-00498-COA-R3-CV, 2016 WL 3662468 (Tenn. Ct. App. June 30, 2016) (Stafford, J., concurring). Respectfully, we conclude that the Searcys' have waived this argument by failing to present it at the trial level.

Tennessee courts have long dealt with the issue of waiver of arguments not introduced at the trial level. Indeed "[i]t has long been the general rule that questions not raised in the trial court will not be entertained on appeal . . . ." *City of Memphis v. Shelby County, Tennessee*, 469 S.W.3d 531, 560 (Tenn. Ct. App. 2015)(citing *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983)); *see also Villages of Brentwood Homeowners Ass'n, Inc.*, No-01A01-9708-CH-00388, 1998 WL 289342, at *2 (Tenn. Ct. App. June 5, 1998)("[A]ppellate courts will ordinarily decline to consider issues being raised for the first time on appeal . . . [t]hus arguments not asserted at trial are deemed waived on appeal." (internal citations omitted)). Further, this Court in *City of Memphis*, found that because the argument "was neither presented nor decided in the trial court [the Defendants] waived [their] right to argue the issue for the first time on appeal." *Id.* at 561 (citing *In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009)).

Moreover,

> [s]ummary judgment standards are both well settled . . . and difficult for the moving party to meet. Parties on both sides of a summary judgment motion must heed those standards. The non-moving party must fully oppose a motion for summary judgment before it is granted rather than [seek to] overturn a summary judgment after only weakly opposing the motion.

*Estate of Cunningham*, 2016 WL 3662468 (Stafford, J., concurring)(quoting *Chambliss v. Stohler*, 124 S.W.3d 116, 121 (Tenn. Ct. App. 2003)). Accordingly, a party's appeal to "this Court of a trial court's order granting summary judgment is not an opportunity for the parties to set forth novel arguments not previously raised before the trial court." *Estate of Cunningham*, 2016 WL 3662468 (Stafford, J., concurring). Therefore, "a party may not litigate an issue on one ground, abandon that ground post-trial, and assert a new

basis or ground on appeal." ***Edmunds v. Delta Partners LLC.***, 403 S.W.3d 812, 825 (Tenn. Ct. App. 2012) (citing ***State v. Leach***, 148 S.W.3d 42, 55 (Tenn. 2004)); *see also* ***Estate of Cunningham***, 2016 WL 3662468 (Stafford, J., concurring) (citing ***State v. Abbott***, No. 01C01-9607-CC-00293, 1996 WL 411645, at *2 (Tenn. Crim. App. July 24, 1996)) ("Tennessee courts have held that it is inappropriate to allow a party to take one position regarding an issue in the trial court, and then 'change its strategy or theory in midstream, and advocate a different ground or reason in this Court.'").

In their brief, the Searcys contend that "the record in this matter clearly sets forth multiple parties citing repeated examples of the [the Axleys'] knowledge of the dog's dangerous propensities, including a history of mischievousness or playfulness as applicable to the definition of same." However, the Searcys failed to advance this theory in the trial court. We concede that at the trial level, the Searcys argue that the Axleys knew or should have known of their dog's dangerous propensity. But, the sole theory set forth by the Searcys in the trial court for this knowledge includes only that "[Mr.] Axley knew of the violent condition thereby striking and ordering [the dog] to leave the first time she jumped on [Mrs. Searcy and her son] . . . . By [Mr. Axley's] actions prior to the bite, he knew or should have known of the dog's potential dangerous propensities." However, on appeal, the Searcys assert a new theory of the case, arguing that Mr. Axley knew or should have known of the dog's dangerous propensity because of its mischievous or playful nature. Because the Searcys failed to make this argument in the trial court, the trial court "[h]aving never been presented with this argument at the trial level . . . was unable to make a specific finding" about this particular basis for liability. ***Edmonds***, 403 S.W.3d at 825. Accordingly, the Searcys waived their ability to present this claim on appeal.

In conclusion, the Searcys' do not have a common law claim because section (c)(1) of the Dog Bite Statute abrogates their claim for general negligence. Further, the Searcys did not provide sufficient proof to show that the Axleys knew or should have known that their dog would bite the Searcys' minor son. Lastly, the Searcys' failed to raise their argument concerning the mischievousness of the dog at the trial level; therefore, that argument is waived on appeal. Thus, we affirm the trial court's order to grant the Axleys' motion for summary judgment. Costs of this appeal are assessed to Appellants Corey and Demetria Searcy, and their surety.

_____
J. STEVEN STAFFORD, JUDGE